**Willie Terion WASHINGTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69737.**

Court of Criminal Appeals of Texas, En Banc.

March 1, 1989.

Certiorari Denied June 26, 1989. See 109 S.Ct. 3229.

---

William K. Goode, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kathlyn Giannaula and Bob Stabe, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant was convicted of capital murder. V.T.C.A. Penal Code, Sec. 19.03. The death penalty was imposed after the jury answered affirmatively the special issues submitted under Art. 37.071, V.A.C.C.P. Appellant raises nine points of error before this Court, but he does not challenge the sufficiency of the evidence to support his conviction. We therefore will recite the facts only as necessary to address appellant's points of error. We will affirm appellant's conviction.

The record reflects that on December 19, 1985, Yemane Kidane and Kifelmariam Tareh were working in Mike's Food Market of which Kidane was a part owner. At approximately 8:30 p.m. that evening, appellant entered the store and went to the back where Tareh was stocking the cooler with beer. Holding Tareh at gunpoint, appellant approached the register where Kidane was working and said, "Give me all the money. I'm going to hurt you." Kidane gave appellant between seventy and one hundred dollars in cash and some food stamps. Appellant allegedly then moved Tareh to the right one step, shot Kidane in the jaw, shot Tareh in the head killing him and then left the store. Kidane, who was not killed by the shot to his jaw, then ran out of the store and fired two shots into the air from a gun that he had in his pocket. Kidane then went to a lounge next to the food market to ask for help in getting the police and an ambulance. Kidane later identified appellant as the alleged perpetrator. Kidane stated he did not know appellant's name, but he recognized him because he came into the food market on a daily basis.

In his first point of error, appellant contends that the prosecutor's opening statement to the jury invited the jury to consider the impact of the murder on the deceased's wife and "created an unacceptable risk that the jury imposed the death penalty ... in an arbitrary and capricious manner in violation of the Eighth and Fourteenth Amendments to the United States

Constitution."[1] Appellant makes two arguments as to why the prosecutor's comment and the wife's testimony amount to reversible error: (1) that the prosecutor's statement in effect made the wife's testimony a "walking victim impact statement"; and (2) that the wife's testimony amounted to a "witness outburst", both of which had a prejudicial effect on the jury.

Immediately prior to commencement of the trial, the trial judge admonished the jury that the opening statement is not evidence but is an aid to understanding the nature of the case and the significance of the evidence when it is introduced. In his opening statement in the guilt/innocence phase of trial, the prosecutor stated to the jury:

> Also anticipate Miss Tiberh Tsegai to testify, who is the wife of the deceased, concerning their relationship and some background on the deceased.

When the State called Tsegai to testify appellant's trial counsel promptly requested a hearing outside the presence of the jury for a determination of the relevancy of Tsegai's testimony. Defense counsel contended the State was calling Tsegai to establish that her husband, the deceased, was a good and peaceful man, and thereby inflame the jury. The State rebutted that Tsegai's testimony was necessary to establish the identity of the deceased. "In an abundance of caution", the trial court allowed the prosecutor to ask Tsegai questions outside the presence of the jury.

While testifying, outside the presence of the jury, about the deceased's background and identifying him, Tsegai began to cry. Defense counsel reiterated his argument that the "grieving widow['s]" testimony would prejudice the jury against appellant. The trial judge instructed Tsegai that she would not be allowed to testify unless she could answer the prosecutor's questions without any sort of outcry or tears. The trial judge also instructed the prosecutor to limit his questioning of Tsegai to the issues of identification of the deceased, the spelling of his name, and Tsegai's relationship to him. The jury was brought back into the courtroom and the trial continued. On direct examination of Tsegai, the prosecutor elicited only the following testimony:

Q. Will you tell us your name?

A. My name Tiberh Tsegai.

Q. And where do you live, ma'am?

A. I am living in Dallas.

Q. And, Miss Tsegai, prior, before December 1985, had you been married?

A. 1982.

Q. Got married in 1982?

A. Yes.

Q. And what was the name of the person that you married?

A. Kifelmariam.

Q. He have a last name?

A. Kifelmariam Tareh.

Q. And, Miss Tsegai, did you bring something with you that had your husband's name written on it?

A. Yes.

\* \* \* \* \* \*

Q. And I'm going to show you what's been marked as State's Exhibit No. 51 and ask you: Does this social security card have your husband's name on it?

A. Yes.

Q. And I'm going to show you State's Exhibit No. 51-A and is this a copy of the card?

A. Okay.

Q. Is this a copy?

A. Yes.

[Prosecutor]: Your Honor, the State would offer in evidence State's Exhibit No. 51-A. I tender it to Defense Counsel.

[Defense Counsel]: We have no objection, Your Honor.

The Court: State's Exhibit 51-A is received into evidence without objection.

---

**1.** Appellant either misunderstands our capital murder sentencing scheme or misstates it in his point of error and in his brief. Pursuant to Art. 37.071(e), supra, the trial court assesses the death penalty as punishment upon the jury's affirmative answers to the submitted special issues. Appellant does not argue that Tsegai's testimony affected the jury's answers to the special issues.

Q. (by the Prosecutor) Miss Tsegai, you're going to have to go back to Dallas tonight?

A. Yes.

[Defense Counsel]: Object, Your Honor, to that question.

The Court: Objection sustained.

* * * * * *

Q. Miss Tsegai, I'm going to show you what's been marked for identification State's exhibit No. 35 (a full-faced morgue photograph of the deceased) and can you, if you know, identify the person in that photograph?

A. Yes.

Q. And who is that?

A. It's my husband.

Q. And that's Kifelmariam Tareh?

A. Yes.

[Prosecutor]: Pass the witness, Your Honor.

[Defense Counsel]: I have nothing of this witness, Your Honor.

■ As direct authority for vacating his death sentence, appellant cites *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). In that case, the Supreme Court held unconstitutional a Maryland statute which required introduction of a victim impact statement at the sentencing phase of a capital murder trial. The victim impact statement described the personal characteristics of the victims and the emotional impact of the crimes on the family, and it set forth the family members' opinions and characterizations of the crimes and the defendant. The statement was read to the jury at the sentencing phase of trial. The Supreme Court held that this information was irrelevant to a capital sentencing decision, and that its admission created an unacceptable risk that the jury imposed the death penalty in an arbitrary and capricious manner. Contrary to appellant's contention, Tsegai's testimony identifiying her husband as the deceased did not amount to a victim impact statement, as described in *Booth v. Maryland,* supra.

In appellant's trial, Tsegai testified at the guilt/innocence phase only. The prosecutor limited his questioning to Tsegai's relationship with the deceased and the identification of him. There was no testimony as to Tsegai's opinions of appellant, the alleged crime, or the emotional impact on her of her husband's murder. Thus, Tsegai's testimony did not amount to a victim impact statement as contemplated by *Booth v. Maryland,* supra, and therefore that case does not control the disposition of this point of error.

■ Secondly, appellant claims the prosecutor's motive in sponsoring Tsegai as a witness was highly improper and cites *Stahl v. State,* 712 S.W.2d 783 (Tex.App.— Houston [1st Dist] 1986).[2] In *Stahl,* supra, the prosecutor attempted to prove the identity of a homicide victim through the testimony of the deceased's mother. The trial judge in that cause admonished the victim's mother that her testimony would be disallowed if there were any show of emotion or any type of outburst on her part. The woman was not shown the morgue photograph of her son prior to her testimony. When asked to identify the person in the morgue photograph, the deceased's mother sobbed and exclaimed "Oh, my God. My baby. My God. . . . May he rest in hell. May he burn in hell. Oh, my baby." The defendant's counsel immediately requested that the jury be removed from the courtroom and moved for a mistrial, which was denied. The prosecutor compounded the harm of the mother's outburst by referring to it in his jury argument. We held this to be reversible error. See *Stahl,* 749 S.W.2d 826.

Appellant concedes that his case is distinguishable from the *Stahl* case in that there was no outburst by Tsegai during her testimony, but appellant claims that no outburst was necessary "to complete the picture [of the bereaved widow] painted for the jury." Appellant ignores, however, that the factors suggesting harm, which required a reversal in the *Stahl* case, lie in

**2.** Since appellant's appeal to this Court, we affirmed the court of appeals' opinion. *Stahl v.*

*State,* 749 S.W.2d 826 (Tex.Cr.App.1988).

the cumulative effect of the outburst and the improper jury argument. There was no emotional outcry by Tsegai in this case. Appellant did not move for a mistrial after Tsegai testified.[3] Nor does appellant complain of any improper jury argument by the prosecutor which may have emphasized Tsegai's testimony. Given these circumstances, the innocuous nature of the prosecutor's opening statement, and the admonishment by the trial judge that the statement was not evidence, we do not agree with appellant that he was prejudiced by the the admission of Tsegai's testimony. We conclude that the combination of the prosecutor's opening statement and Tsegai's testimony did not create an impermissible risk that the sentencing decision was made in an arbitrary and capricious manner. Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that his own defense counsel impermissibly informed the jury of appellate review of a death sentence and thereby violated the Eighth and Fourteenth Amendments to the United States constitution by diminishing the reliability of the jury's determination that death is the appropriate punishment for him. Appellant relies on *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), wherein the prosecutor, in response to defense counsel's argument, told the jury that their death penalty verdict was not a final decision in that it was reviewable by the state supreme court. The Supreme Court held it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere, i.e. with appellate courts.

Appellant argues that the net cumulative effect of his defense counsel's cross-examination of Robert Tennard, a State's witness at the punishment stage, and the prosecutor's argument at the punishment stage was to minimize the jury's sense of responsibility in determining whether death was the appropriate punishment for him. On direct examination, Tennard stated that he had recently been convicted of capital murder and sentenced to death and that he had previously been convicted of rape. At the time of appellant's trial, Tennard was incarcerated in the Harris County Jail and lived in the same cell block as appellant. Tennard was called as a witness by the State to testify to a problem that arose between him and appellant over the use of the community telephone in the jail. Through cross-examination, defense counsel attempted to establish the bias of Tennard and it was in this context that appellate review was mentioned. After Tennard explained that he had already been convicted and sentenced,[4] that no deals had been made with the prosecutor and, therefore, he did not know how testifying for the State at this trial could benefit him in any way, he stated that "It's up to the higher courts to dispose of that matter. I don't see how they could be in his [the prosecutor's] grasp or anybody else's." Defense counsel continued to question Tennard until he established that Tennard hoped his case would be "overturned", "reduced", or "dismissed totally" and that Tennard was presently doing everything possible to have his "case reduced".

In his jury argument at the punishment stage, the prosecutor made the following opening comments, to which there was no objection by appellant's trial counsel:

> In trying to anticipate other arguments I expect or you might hear argument to the effect that you, the jury, are sentencing the defendant to death, that *you're killing him*, and *that's simply not the case*. The defendant is here because of his own conduct, not because of anything you have done. The defendant is here because of actions and choices he has made. Don't let the Defense argument or the Defense attorney make you feel guilty about what you're going to do.

---

3. Moreover, the defendant in *Stahl*, supra, attempted to show harm by perfecting a bill of exception. T.R.App.Proc. 52. Appellant made no such showing in this cause.

4. Tennard's conviction is presently before this Court on appeal.

The defendant is the one that has put himself in this chair, because of voluntary and conscious actions he has taken and please remember that as you listen to the Defense argument and deliberate and still keep that common sense that you have.

 We do not agree with appellant that this *unobjected* to argument, which mentions *nothing* about appellate review of the death penalty, when combined with Tennard's testimony, misled the jury into believing that the responsibility for determining the appropriateness of appellant's death rests with the appellate courts or elsewhere. The prosecutor did not even refer to Tennard's testimony during his opening argument,[5] nor did the prosecutor invite the jury to shift to an appellate court the responsibility of determining the appropriateness of a death sentence for appellant, which was the case in *Caldwell v. Mississippi,* supra. Although Tennard mentions the possibility of review of his *case* by appellate courts, his testimony does not suggest that responsibility for determining the appropriateness of a death penalty verdict rests with the appellate court instead of the jury. Point of error number two is overruled.

 In a related point of error, appellant claims his trial counsel was ineffective for informing the jury of the availability of appellate review and, therefore, his death sentence is unreliable. As noted above, the only reference to appellate review was regarding Tennard's death sentence and that reference was limited to showing why Tennard would be interested in testifying for the State. Having concluded that there was no error in the elicitation of testimony from Tennard regarding his bias for the State, we further conclude that there was

no ineffective assistance of counsel.[6] We find no merit in appellant's third point of error and it is overruled.

In points of error four through seven, appellant complains of the admission of harmful evidence at trial. In points of error four and five, appellant claims he was denied a fair trial by the admission of the allegedly harmful evidence, and in points of error six and seven, he claims he was denied the effective assistance of counsel by counsel's failure to make objections to the introduction of such evidence.[7] In these four points of error, appellant asserts five instances in which allegedly inadmissible evidence was admitted. Although these instances do not directly comport with the points of error, we will address each instance and the ineffectiveness claim accompanying two of these instances.

 Appellant first complains that proof of the deceased's character for being peaceful and non-violent was introduced into evidence at trial through the testimony of "no fewer than four" State's witnesses. Appellant claims that admission of this evidence was improper because there was no self-defense issue at trial. Appellant concedes, however, that there was no objection to any of this testimony except in one instance, but, there appellant's trial counsel failed to pursue the objection to an adverse ruling. Therefore, the error, if any, is waived and nothing is preserved for our review. *Cook v. State,* 741 S.W.2d 928 (Tex.Cr.App.1987); *Vela v. State,* 516 S.W.2d 176 (Tex.Cr.App. 1974); Tex.R.App.Proc. 52(a).

 Appellant next complains of the "use of testimony concerning his nervousness after being arrested ..." as substantive evidence of his guilt. Officer Wendell

---

5. Proper jury argument must fall within one of four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Modden v. State,* 721 S.W.2d 859 (Tex.Cr.App.1986). The prosecutor's argument is a plea for law enforcement in that he argues to the jury that they should not feel guilty for giving appellant the punishment they feel he deserves.

6. We agree with the State in its brief where it argues that the failure to cross-examine a witness as to his bias or prejudice could also have prompted an ineffectiveness claim and that the purpose of appellant's trial counsel in cross-examining Tennard was consistent with his overall strategy at punishment.

7. No hearing has been held by the trial court on appellant's ineffective assistance of counsel claims.

Kendrick of the Houston Police Department testified that appellant became very uncooperative and nervous upon being told that two people had been shot and that one of them was still alive. According to Kendrick, appellant was in custody at this time and had been read his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant argues that use of this evidence violated his right against self-incrimination. See *Sanchez v. State*, 707 S.W.2d 575 (Tex.Cr.App. 1986). Appellant again acknowledges, however, that his trial counsel did not object to this testimony and no error is preserved for appellate review. *Cook*, supra; *Vela*, supra.

■ Error was also waived by appellant in regard to his complaint that an extraneous offense was admitted into evidence through the testimony of appellant's former girlfriend. During direct examination by the State, Mary Drakes stated that she continued to have contact with appellant, whom she was not dating at the time of this alleged offense, even after they broke up. Drakes testified that appellant "would come by my house all the time and threaten me and calling me on the phone." Appellant argues that admission of the testimony that appellant threatened Drakes is inherently prejudicial and cites *Elkins v. State*, 647 S.W.2d 663 (Tex.Cr.App.1983). Appellant's trial counsel did not object to this testimony. Appellant does not complain of any other statements by Drakes or other State's witnesses. Therefore, we are again presented with nothing to review.

Appellant next complains that the State, through testimony from several police officers, bolstered Kidane's identification of him, but, appellant concedes that his counsel did not object to any of this testimony on the ground of bolstering and therefore no error is preserved for our review. See *Cook* and *Vela*, supra. In addition to this complaint, appellant argues that counsel's failure to preserve error as to inadmissible bolstering evidence is a basis in and of itself for finding ineffective assistance of counsel, citing *Garcia v. State*, 712 S.W.2d 249 (Tex.App.—El Paso 1986, pet. ref'd.).

In *Garcia*, the court of appeals held the defendant was denied effective assistance of counsel by his counsel's failure to make proper objections to exclude inadmissible and prejudicial testimony of two expert witnesses as to the credibility of the complaining witnesses. Following the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court held counsel's performance had an adverse effect on the defendant's case and reversed the judgment of the trial court.

Appellant complains of the testimony from three police officers who arrived at Mike's Food Market shortly after the offense occurred. At trial, Officer Gary Powers of the Houston Police Department testified that the information in his offense report for this alleged offense reflected that Kidane told him who had shot him and Tareh, where this person lived, and that Kidane gave a physical description of this person. Powers did not state the specifics of what Kidane told him. Officer Darin Davis, also of the Houston Police Department, testified that he and his partner were the first officers to arrive at Mike's Food Market the night of the alleged offense. Davis stated that Kidane "flagged us down" and told them there had been a robbery, that a man had been shot, and that the man who did it lived with a woman who lived in the apartments across the street from Mike's Food Market. After a hearing outside the presence of the jury, the trial judge ruled that Davis's testimony regarding what Kidane had told him was admissible as an excited utterance. Tex.R. Crim.Evid. 803(2). There were no objections to the evidence otherwise. Houston Police Officer Doug Osterberg testified that he asked Kidane to go down to a line-up which he was helping to conduct. Osterberg stated that appellant was one of the individuals in that line-up. There was no testimony from Osterberg that Kidane identified appellant at the line-up as the one who committed the alleged offense. Appellant argues that this testimony from these three officers was improper bolstering of Kidane's prior identification of appellant as the man who shot him and Tareh.

Appellant is correct that Osterberg's testimony was improper bolstering evidence. Osterberg stated that Kidane attended a line-up at his request and that appellant was one of the persons in that line-up. Although Osterberg did not specifically state that Kidane identified appellant at the line-up, the logical conclusion, since the case went to trial and Osterberg testified to these events, is that Kidane did identify appellant as the one who shot him and Tareh. This testimony adds credence or weight to Kidane's identification testimony, *Pless v. State*, 576 S.W.2d 83 (Tex. Cr.App.1978), and is improper bolstering evidence. Given the facts of this case, however, we hold that the error in admitting Osterberg's testimony was harmless and that counsel was not ineffective in failing to object to such evidence.

During Kidane's testimony at trial, he identified appellant as the man who robbed him and shot him and Tareh. Kidane stated he had known appellant as a customer in Mike's Food Store for six or seven months, that appellant always came into the store at night when Kidane was working, and that appellant came into the store almost every day of the week. Kidane further stated that on the night of December 19, 1985, appellant came into the store two times, once approximately twenty or thirty minutes before the robbery and murder. Appellant came in the store, searched his pockets for money and then left. Kidane stated he did not pay any attention to appellant at this time because he recognized him as one of his customers. The second time appellant entered the store he walked to the back to the coolers where Tareh was stocking them with beer. Appellant, holding Tareh at gunpoint, then proceeded to the front of the store where Kidane was checking supplies. Kidane testified that appellant told him "Give me all the money. I'm going to hurt you[.]" and pointed the gun at him. Kidane gave appellant seventy to one-hundred dollars in cash and some food stamps. Appellant then moved Tareh to his right and shot Kidane in the face, the bullet breaking his jaw and travelling down to his neck. After he fell to the ground, Kidane heard a second shot and then heard the door to the store open and close. When Kidane got up from the floor, he saw that Tareh had been shot in the head and was dead. Kidane ran to a nearby lounge to call the police and an ambulance. He testified that he knew that the man who shot him had a girlfriend named Mary who was also one of his customers and that when the police arrived he took them over to Mary's apartment. Kidane again made an in-court identification of appellant as the man who committed the alleged offense.

The test for determining whether counsel was ineffective was established in *Strickland v. Washington, supra*, which we adopted in *Hernandez v. State*, 726 S.W.2d 53 (Tex.Cr.App.1986). The test for determining prejudice or reversible error resulting from ineffective assistance of counsel requires that:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. When addressing an appellant's ineffective assistance of counsel claim, we first determine whether, in light of all the circumstances, the trial counsel's acts or omissions were outside the range of professional competent assistance, and if so, whether there is a reasonable probability that the result of the trial would have been different absent the deficient conduct. *Holland v. State*, 761 S.W.2d 307, (Tex.Cr. App.1988), citing *Strickland v. Washington, supra*.

Assuming *arguendo* that trial counsel's failure to object was "outside the range of professional competent assistance", we conclude there is no reasonable probability that the result of this trial would have been any different had appellant's trial counsel objected to Osterberg's identification testimony.[8] Kidane was the

8. Furthermore, we note that the failure to object to every instance of improper evidence does not

only surviving eyewitness to the offense. His identification testimony was unimpeached, no defenses such as alibi were raised, and the evidence of appellant's guilt was overwhelming. We hold that appellant fails to satisfy the test for determining ineffective assistance of counsel.

The same is true for the testimony from Powers and Davis, and hence it is not necessary for us to decide in this case whether the testimony from Powers and Davis was improper bolstering and required an objection or whether the failure to object to such evidence was "outside the range of professional competent assistance". Given the evidence adduced at trial, there is no reasonable probability that, but for trial counsel's failure to object to the statements of Powers and Davis, the result of appellant's trial would have been different. Thus, we conclude that the test outlined in *Hernandez*, supra, has not been met.

■ Appellant also raises an ineffective assistance of counsel claim as to testimony elicited from Powers when he was recalled as a witness by the defense. On redirect examination, the State established that Kidane told Powers that the man who shot him and Tareh was "Mary's boyfriend" and indicated where she lived. Defense counsel objected to this testimony on grounds of redundancy and the trial judge sustained the objection stating that the question exceeded the scope of the State's redirect examination. The State then passed the witness. Appellant argues that his trial counsel was ineffective for failing to object to the admission of this evidence on the ground of bolstering. The redundancy objection, however, was *sustained* so appellant got all relief that he requested, which is the same relief he would have gotten if defense counsel had objected on grounds of bolstering and that objection was sustained. We do not believe nor do we hold that the failure to object on a different, possibly sustainable ground is ineffective

assistance of counsel where counsel's trial objection is sustained. There is no basis for an ineffective assistance of counsel claim on these facts and we therefore do not address it.

■ Appellant's last complaint in points of error four through seven is that the indictment misjoined the offenses of capital murder, murder and aggravated robbery and that had his counsel objected, potentially reversible error would have been preserved. This contention is basically an ineffective assistance of counsel claim for failure to object. Prior to testimony the State abandoned the paragraph alleging aggravated robbery. Appellant's trial counsel did not file a motion to quash the indictment. The trial judge charged the jury on capital murder and murder; appellant's counsel did not object to the charge as submitted.

Article 21.24, V.A.C.C.P., permits the joinder of two or more offenses in a single indictment if those offenses arise out of the same criminal episode as defined in Chapter 3 of the Penal Code.[9] Section 3.01 of the Penal Code defines criminal episode as the repeated commission of any one offense constituting an offense against property under Title 7 of the Penal Code. The indictment in this cause alleged both capital murder and murder, neither of which is an offense against property under Title 7 of the Penal Code.

We find, however, that there was no misjoinder error in this cause and that Art. 21.24, supra, does not apply since murder is a lesser included offense of capital murder. *Thomas v. State,* 701 S.W.2d 653 (Tex.Cr. App.1985). We believe that misjoinder, as contemplated and prohibited by Art. 21.24, supra, does not encompass the allegation of two offenses in a single indictment where one offense is a lesser included offense of the other.

mean that appellant's representation was ineffective. *Ewing v. State,* 549 S.W.2d 392 (Tex.Cr. App.1977).

**9.** As of September 1, 1987, V.T.C.A. Penal Code § 3.01, was amended and the law concerning

this issue was changed. That amendment would dispose of appellant's claim, but since appellant's trial was before the effective date of the amendment we address his claim under the prior law.

Whether a greater offense and its lesser included offenses are the same offense for joinder purposes has not been previously addressed by this Court, but that question has been resolved in other areas of law and we find persuasive the reasoning in those cases.

In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court held that joyriding and auto theft were "the same statutory offense" for double jeopardy purposes. The Court applied the rule established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) in reaching this conclusion. That rule is:

... where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not ...

The Supreme Court noted that this test emphasizes the elements of the two offenses, and that if each offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied. 432 U.S. at 166, 97 S.Ct. at 2225. Agreeing with the Ohio Court of Appeals, the Supreme Court stated that joyriding is a lesser included offense of auto theft because the lesser offense required no proof beyond that required for conviction of the greater. The Supreme Court held the greater offense is therefore by definition the "same" offense for purposes of double jeopardy as any lesser offense included in it. *Id.* at 168, 97 S.Ct. at 2226.

In *Behrend v. State*, 729 S.W.2d 717 (Tex.Cr.App.1987), this Court held that capital murder and murder were the "same" offense for purposes of the Speedy Trial Act. We noted that although the first offense alleged, capital murder, required greater proof than the second offense alleged, murder, the offenses arose out of the same transaction, the killing of the victim, and were therefore the same offense. *Id.* at 723.

In *Lyles v. State*, 582 S.W.2d 138 (Tex. Cr.App.1979), this Court decided whether a defendant had been subject to improper joinder of prosecutions in violation of V.T. C.A. Penal Code § 3.02(c), an issue similar to the one in this cause. In *Lyles*, supra, the defendant was indicted and convicted of theft. That conviction was reversed on appeal by this Court because the indictment was faulty. The State then reindicted the defendant alleging theft, as in the previous indictment, and also the unauthorized use of a motor vehicle. The defendant was convicted of unauthorized use of a motor vehicle upon retrial. The defendant contended on appeal that this second indictment violated Penal Code § 3.02(c), supra, which generally prohibits prosecution of an offense in a new trial which was not joined in the former prosecution. We disagreed with the defendant's argument on appeal since the offense of unauthorized use of a motor vehicle was a lesser included offense of theft. Although not explicitly holding that the two offense were the "same", we held that the inclusion of the lesser included offense in the second incictment did not violate Penal Code § 3.02(c). Thus the lesser included offense was not a statutorily different offense than the greater offense.

Based upon the foregoing analyses, we conclude that capital murder and murder are the same statutory offense for joinder purposes since each offense does not require proof of a fact which the other does not. *Blockburger*, supra. The greater offense, by definition, contains all the elements of the lesser offense. Appellant's trial counsel was not ineffective for failing to object to the indictment since there was no misjoinder error in the indictment.

Appellant's points of error, numbers four through seven, are overruled.

Appellant groups his last two points of error together. In his eighth point of error, appellant claims that our sentencing procedure for capital offenses violates the Eighth and Fourteenth Amendments to the United States Constitution because it precludes consideration of miti-

gating evidence,[10] specifically a charge on the parole and good time laws that is statutorily required to be given in non-capital cases to prevent jury misconduct. See Article 37.07, § 4, V.A.C.C.P. Appellant argues that the failure of Art. 37.07, § 4, supra, to be applicable to capital offenses renders the capital sentencing procedure unconstitutional.

Appellant's argument is without merit in light of our recent decision in *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1988) (Opinion on Rehearing). In *Rose*, we held that Art. 37.07, § 4(a), supra, and the instruction required by it were unconstitutional as violative of the separation of powers doctrine and a defendant's right to due course of law guaranteed under the state constitution. It is no longer constitutionally permissible to give a jury charge on parole and good time laws in any criminal case, capital or non-capital. Thus, the failure to charge the jury on parole and good time laws does not render Art. 37.071, supra, unconstitutional but actually prevents trial error. Moreover, we recently held in *Felder v. State*, 758 S.W.2d 760 (Tex.Cr. App.1988), that Art. 37.07, § 4, supra, has no application in capital cases. We overrule appellant's eighth point of error.

In a related point of error, appellant's ninth and last point of error, appellant argues he was denied equal protection of the law because his jury at punishment was not given a charge on parole and good time laws. Appellant's argument is without merit in light of *Rose*, supra, and *Jefferson v. State*, 751 S.W.2d 502 (Tex.Cr.App.1988), wherein we held that an unconstitutional statute is void from inception and cannot provide a basis for any right or relief. No criminal defendant is entitled to the type of jury charge on parole contemplated by appellant in this case. Furthermore, in a decision prior to *Rose*, supra, we held the matter of parole or a defendant's release thereon is not a proper matter for jury consideration at punishment. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979). Therefore, it follows that there is no denial of equal protection. Appellant's ninth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

McCORMICK, P.J., and DUNCAN, J., concur in the result.

CLINTON, Judge, concurring.

In my view *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is wholly inapposite here. Its "test" is an aid to the judiciary in determining whether Congress intended that the same act or transaction constitute separate offenses for purposes of imposing punishment for both offenses. *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

Such approaches to solving jeopardy problems do not lead to a resolution of a joinder issue; the latter is a pleading matter, rarely a problem under federal law. See generally Fed.R.Cr.Pro. 8(a), and Wright, Federal Practice and Procedure: Criminal 2d § 143 (2d ed. 1982).

Nor is resort to decisions under the late Texas Speedy Trial Act all that helpful, for special considerations informed the legislative formulation of "same offense" arising out of one transaction.

Assuming, as the majority must, that legislative limitation of Article 21.24 to property offenses effectively revived the *status quo ante* with respect to joining other offenses, see *Drake v. State*, 686 S.W.2d 935, at 949 (Tex.Cr.App.1985), under common law rules melded into former statutes, there is no misjoinder here. *Ibid.* Thus there is no ground for objection.

With those observations and reservations about effectiveness of counsel, I join the judgment of the Court.

---

**10.** The Supreme Court recently held, under the facts of the case in question, that our capital sentencing system adequately allows for jury consideration of mitigating circumstances. *Franklin v. Lynaugh*, — U.S. —, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).