Opinion filed July 23, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed July 23,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00326-CR 

                                                    __________

 

                            RAMON CALDERON GARCIA, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 244th District Court

 

                                                           Ector
County, Texas

 

                                                 Trial
Court Cause No. C-33,037

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

 The
jury convicted Ramon Calderon Garcia of driving while intoxicated as a
subsequent offense and assessed his punishment at ten years confinement.  We
affirm.

                                                             I. 
Background Facts








Odessa
Police Department Corporal Gary Potter was on patrol the morning of January 23,
2006, when he noticed a brown van driving north on the wrong side of Adams Street. 
Corporal Potter turned and followed.  He observed the van cross 11th
Street, drift back to the right side of Adams Street, and cross 12th Street. 
The driver of the van ran a stop sign on 13th Street and then drifted back to
the left before stopping on the left side of Adams Street.  Corporal Potter
pulled in behind the van and turned on his emergency lights.  The van=s driver quickly exited. 
Corporal Potter instructed the driver to return to his vehicle, but he would
not do so.  Instead, he kept saying, AWhat?@ and AWhat vehicle?@

Corporal
Potter approached the driver.  He was swaying, and his eyes were red,
bloodshot, and glossy.  The driver=s
speech was slurred, and he was mumbling.  Corporal Potter could smell a strong
odor of alcohol.  Corporal Potter identified the driver as Garcia.  Corporal
Potter asked Garcia why he had stopped and was told that he did not like people
following him.  Garcia had no reason for driving on the wrong side of the road,
and he volunteered that he had had a few beers. Corporal Potter believed Garcia
was intoxicated, and he performed the Horizontal Gaze Nystagmus (HGN) test. 
Garcia failed.  All six potential clues of intoxication were present.  Corporal
Potter asked Garcia to perform the walk and turn test and demonstrated it. 
Garcia had difficulty standing during Corporal Potter=s demonstration, and he refused to perform it,
claiming that it was too cold.  Corporal Potter asked Garcia to perform a one
leg stand test.  Garcia closed his eyes and counted, but he would not lift one
foot and could not count correctly.

Corporal
Potter placed Garcia under arrest and asked him for a breath sample.  Garcia
refused.  The police inventoried Garcia=s
van, and Corporal Potter found an open, cold, and partially full beer bottle on
the floorboard.  The bottle was not secured and would have fallen if the van
had moved.  Garcia was placed in Corporal Potter=s
car.  Once inside, he began acting unusually.  For example, he told the
officers to go ahead and call the wrecker for his van B even though the wrecker was already in
place.  During the ride to the jail, Garcia was alternately quiet and
belligerent.  He asked Corporal Potter several questions, some of which made no
sense.  At the jail, Garcia was given the chance to repeat the field sobriety
tests, but he refused to respond.








Garcia
testified on his own behalf.  He explained that he had had a 16-ounce bottle of
beer earlier that day while raking outside his house.  He went to bed at 9:00
p.m. but was awoken at midnight when a friend came by.  The friend was
accompanied by a girlfriend, and they watched television.  Garcia=s friend got into a fight
with his girlfriend.  Eventually, his friend asked for a ride.  Garcia tried to
refuse because his van had mechanical issues, but he eventually gave in. 
Garcia dropped the friend off at a bar and was driving home when he saw a
police car drive toward him.  The police car did a quick U-turn behind him; so
Garcia stopped in front of another friend=s
house.  He acknowledged running a stop sign but blamed that on his brakes.  He
also testified that he suffers from several physical problems and that he was
taking numerous medications.  He blamed his inability to drive normally on the
cold weather and alcohol and claimed that the beer bottle found in his van
belonged to the friend he dropped off at a bar.

                                                                       II. 
Issues

Appellant
challenges his conviction with three issues, contending that his trial counsel
was constitutionally ineffective and that the evidence was legally and
factually insufficient.

                                                         III. 
Ineffective Assistance

To
determine if trial counsel rendered ineffective assistance, we must first
determine whether Garcia has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466 U.S. 668 (1984). We must indulge
a strong presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance, and
Garcia must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v.
State, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).  An allegation of
ineffective assistance must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness.  Thompson v.
State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).  Under normal
circumstances, the record on direct appeal will not be sufficient to show that
counsel=s
representation was so deficient and so lacking as to overcome the presumption
that counsel=s
representation was reasonable and professional. Bone v. State, 77 S.W.3d
828, 833 (Tex. Crim. App. 2002).

Garcia
contends that counsel was constitutionally ineffective because he repeatedly
elicited harmful testimony during Garcia=s
direct examination and because he focused the jury=s attention on this testimony during closing
argument.  Garcia acknowledges that the record is silent as to whether Garcia
chose to testify against or pursuant to his counsel=s legal advice.  The record is, in fact,
silent as to any conversations between Garcia and his counsel.  Therefore, we
do not know what Garcia ever told counsel occurred the night of his arrest;
and, most significantly, we do not know what Garcia told counsel during any
conversation concerning his testimony.








Garcia
points to the following testimony to support his contention that counsel
elicited harmful testimony:

Q.        The
B were you B did you B had you lost your normal
faculties B your
normal mental and physical faculties that night because of alcohol?

 

A.        Sort
of.  I usually get like B
I don=t have, like, an
accurate balance, you know, that=s
why I can=t B that=s why, you know, I didn=t take those tests because
I didn=t want to all
of the sudden fall down and he was going to say, you=re drunk, B

 

Q.        My
question was, did you have B

 

[PROSECUTION]:      I
think B Judge, I
object, he=s answered
the question.

 

THE COURT:  Sustained.

 

[DEFENSE
COUNSEL]:         I=ll
ask you again, did you lose your B

 

[PROSECUTION]:      I=ll object to that question.

 

THE
COURT:  Let him finish his question.  Please ask the question.

 

Q.        Were
you B did the alcohol
keep you from driving correctly?  Did your drinking alcohol keep you from
driving correctly?

 

A.        Not
that night, but earlier like I told you.

 

Q.        Okay. 
So was there any alcohol that would have kept you from driving in a normal
manner that morning?

 

A.        Yeah,
probably and the cold weather.

 

Garcia argues
that counsel should have anticipated his unfavorable answers because Corporal
Potter testified that Garcia admitted at the scene that he had been drinking
and because Garcia himself testified that he had had a 16-ounce bottle of beer
earlier that evening.  The record does not support either contention.








First,
we cannot agree that counsel was required to assume that Garcia would testify
consistently with Corporal Potter.  Second, counsel was not ineffective for
asking Garcia if he were impaired.  We do not know if counsel knew Garcia would
testify that he had had a beer earlier in the evening.  If this was a surprise,
sound trial strategy required follow-up because the prosecutor would almost
certainly have done so, and there is no reason to conclude that Garcia=s testimony would have been
any different.  Even if counsel knew that Garcia would admit drinking one beer
earlier in the evening, this would not signal the subsequent impairment
admission.  Garcia testified that he had had the beer around 6:00 to 6:30 p.m. 
Corporal Potter stopped him several hours later at approximately 1:00 a.m. 
Evidence of a single beer earlier in the evening might help explain Corporal
Potter=s testimony
that he smelled alcohol, and it would be consistent with Corporal Potter=s testimony that Garcia had
admitted to drinking.  But one beer would not ordinarily cause impairment
several hours later.

Because
we do not know what Garcia and his counsel discussed concerning his testimony
or what Garcia told his counsel happened the night of his arrest, we cannot
conclude that counsel knew Garcia would essentially confess and, therefore,
cannot conclude counsel was constitutionally ineffective.  Once Garcia
testified as he did, counsel was forced to acknowledge it during his closing. 
Suggesting that Garcia may have misunderstood the question was not
unreasonable.[1]








But
even if we assume counsel=s
representation was constitutionally deficient, the record does not establish
the requisite harm because the evidence of Garcia=s
guilt was overwhelming.  See Washington v. State, 771 S.W.2d 537, 545-46
(Tex. Crim. App. 1989) (even if counsel=s
failure to object was outside the range of professional competent assistance,
overwhelming evidence of defendant=s
guilt made this error harmless).  If Garcia had not testified, the jury would
have had only Corporal Potter=s
unrefuted testimony that Garcia was driving on the wrong side of the road, that
he ran a stop sign, and that he parked on the wrong side of the road.  The jury
would have had no response to Corporal Potter=s
testimony that Garcia smelled of alcohol, was unsteady, failed the HGN test,
would not or could not perform the other field sobriety tests, and was acting
peculiarly.  Garcia has not shown a reasonable probability that the jury would
have returned a different verdict if it had heard only this evidence.  Issue
One is overruled.

                                                     IV.
Sufficiency of the Evidence  

Garcia
argues that the evidence was legally and factually insufficient because there
was no evidence of his specific blood alcohol level, but there was evidence
that he suffered from numerous health problems and was taking a variety of
prescription medications.  We will apply the following well‑recognized
standards of review to appellant=s
sufficiency challenges.  To determine if the evidence is legally sufficient, we
must review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App.
2000).  To determine if the evidence is factually sufficient, we must review
all of the evidence in a neutral light and determine whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson v. State, 204 S.W.3d
404, 414‑15 (Tex. Crim. App. 2006).

Garcia
is correct that there is no evidence of his specific blood alcohol content. 
Garcia is incorrect to conclude that any blood alcohol level evidence was
required.  The indictment alleged that Garcia was intoxicated:

[B]y reason of
introduction of alcohol into his body, while he was operating a motor vehicle
in a public place, to wit, a public street in said county, and the said
defendant, by reason of such introduction of alcohol into his body, did not
then and there have the normal use of his mental faculties, and he did not have
the normal use of his physical faculties while so operating and driving said
motor vehicle.

 








This indictment
did not require proof of a specific blood alcohol content.  The State was
required to prove impairment caused by alcohol; and, even without regard to
Garcia=s testimony,
Corporal Potter=s
testimony was legally and factually sufficient to establish this.  Corporal
Potter=s description
of Garcia=s driving,
the smell of alcohol on Garcia, the result of the HGN test, Garcia=s statements and behavior
at the scene and while en route to the jail, and an open beer bottle in Garcia=s van that had apparently
been set down when Garcia stopped, sufficiently established that Garcia was
driving while impaired due to alcohol consumption.  This result was not altered
when the evidence of Garcia=s
health problems and medications was considered.  The jury was entitled to
consider this evidence when, for example, it reviewed Garcia=s performance on the field
sobriety tests, but this evidence was not so compelling that the jury could
have only returned an acquittal.  Issues Two and Three are overruled.

                                                         V. 
Holding 

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

July 23, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]Counsel argued:

 

I think he had full use of all of his faculties.  Of
course, I can argue all of that again and again until I=m blue in the face and I=m
sure Mr. Bruce is going to walk up here and talk about the confession that Mr.
Garcia just gave you on the stand, I guess not once, but twice as to whether he
was intoxicated or whether he had lost the normal use of his mental and
physical faculties.

 

The only thing I can argue is that Mr. Garcia did not understand me and
could not follow my verbal questions just like he couldn=t that night because I don=t know if it=s a
problem with his B either the way that I posed the questions or whether
he, in fact, was giving you a confession, I just don=t know, ladies and gentlemen.  I would have to say it=s surprising to me, as it is, I=m sure, to all of you.