**Opinion filed July 23, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00326-CR

_____

## RAMON CALDERON GARCIA, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-33,037**

## M E M O R A N D U M  O P I N I O N

The jury convicted Ramon Calderon Garcia of driving while intoxicated as a subsequent offense and assessed his punishment at ten years confinement. We affirm.

### I. *Background Facts*

Odessa Police Department Corporal Gary Potter was on patrol the morning of January 23, 2006, when he noticed a brown van driving north on the wrong side of Adams Street. Corporal Potter turned and followed. He observed the van cross 11th Street, drift back to the right side of Adams Street, and cross 12th Street. The driver of the van ran a stop sign on 13th Street and

then drifted back to the left before stopping on the left side of Adams Street. Corporal Potter pulled in behind the van and turned on his emergency lights. The van's driver quickly exited. Corporal Potter instructed the driver to return to his vehicle, but he would not do so. Instead, he kept saying, "What?" and "What vehicle?"

Corporal Potter approached the driver. He was swaying, and his eyes were red, bloodshot, and glossy. The driver's speech was slurred, and he was mumbling. Corporal Potter could smell a strong odor of alcohol. Corporal Potter identified the driver as Garcia. Corporal Potter asked Garcia why he had stopped and was told that he did not like people following him. Garcia had no reason for driving on the wrong side of the road, and he volunteered that he had had a few beers. Corporal Potter believed Garcia was intoxicated, and he performed the Horizontal Gaze Nystagmus (HGN) test. Garcia failed. All six potential clues of intoxication were present. Corporal Potter asked Garcia to perform the walk and turn test and demonstrated it. Garcia had difficulty standing during Corporal Potter's demonstration, and he refused to perform it, claiming that it was too cold. Corporal Potter asked Garcia to perform a one leg stand test. Garcia closed his eyes and counted, but he would not lift one foot and could not count correctly.

Corporal Potter placed Garcia under arrest and asked him for a breath sample. Garcia refused. The police inventoried Garcia's van, and Corporal Potter found an open, cold, and partially full beer bottle on the floorboard. The bottle was not secured and would have fallen if the van had moved. Garcia was placed in Corporal Potter's car. Once inside, he began acting unusually. For example, he told the officers to go ahead and call the wrecker for his van – even though the wrecker was already in place. During the ride to the jail, Garcia was alternately quiet and belligerent. He asked Corporal Potter several questions, some of which made no sense. At the jail, Garcia was given the chance to repeat the field sobriety tests, but he refused to respond.

Garcia testified on his own behalf. He explained that he had had a 16-ounce bottle of beer earlier that day while raking outside his house. He went to bed at 9:00 p.m. but was awoken at midnight when a friend came by. The friend was accompanied by a girlfriend, and they watched television. Garcia's friend got into a fight with his girlfriend. Eventually, his friend asked for a ride. Garcia tried to refuse because his van had mechanical issues, but he eventually gave in. Garcia dropped the friend off at a bar and was driving home when he saw a police car drive toward him.

The police car did a quick U-turn behind him; so Garcia stopped in front of another friend's house. He acknowledged running a stop sign but blamed that on his brakes. He also testified that he suffers from several physical problems and that he was taking numerous medications. He blamed his inability to drive normally on the cold weather and alcohol and claimed that the beer bottle found in his van belonged to the friend he dropped off at a bar.

## II. *Issues*

Appellant challenges his conviction with three issues, contending that his trial counsel was constitutionally ineffective and that the evidence was legally and factually insufficient.

## III. *Ineffective Assistance*

To determine if trial counsel rendered ineffective assistance, we must first determine whether Garcia has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668 (1984). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Garcia must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991). An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's representation was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Garcia contends that counsel was constitutionally ineffective because he repeatedly elicited harmful testimony during Garcia's direct examination and because he focused the jury's attention on this testimony during closing argument. Garcia acknowledges that the record is silent as to whether Garcia chose to testify against or pursuant to his counsel's legal advice. The record is, in fact, silent as to any conversations between Garcia and his counsel. Therefore, we do not know what Garcia ever told counsel occurred the night of his arrest; and, most significantly, we do not know what Garcia told counsel during any conversation concerning his testimony.

3

Garcia points to the following testimony to support his contention that counsel elicited harmful testimony:

Q. The – were you – did you – had you lost your normal faculties – your normal mental and physical faculties that night because of alcohol?

A. Sort of. I usually get like – I don't have, like, an accurate balance, you know, that's why I can't – that's why, you know, I didn't take those tests because I didn't want to all of the sudden fall down and he was going to say, you're drunk, –

Q. My question was, did you have –

[PROSECUTION]: I think – Judge, I object, he's answered the question.

THE COURT: Sustained.

[DEFENSE COUNSEL]: I'll ask you again, did you lose your –

[PROSECUTION]: I'll object to that question.

THE COURT: Let him finish his question. Please ask the question.

Q. Were you – did the alcohol keep you from driving correctly? Did your drinking alcohol keep you from driving correctly?

A. Not that night, but earlier like I told you.

Q. Okay. So was there any alcohol that would have kept you from driving in a normal manner that morning?

A. Yeah, probably and the cold weather.

Garcia argues that counsel should have anticipated his unfavorable answers because Corporal Potter testified that Garcia admitted at the scene that he had been drinking and because Garcia himself testified that he had had a 16-ounce bottle of beer earlier that evening. The record does not support either contention.

First, we cannot agree that counsel was required to assume that Garcia would testify consistently with Corporal Potter. Second, counsel was not ineffective for asking Garcia if he were

4

impaired. We do not know if counsel knew Garcia would testify that he had had a beer earlier in the evening. If this was a surprise, sound trial strategy required follow-up because the prosecutor would almost certainly have done so, and there is no reason to conclude that Garcia's testimony would have been any different. Even if counsel knew that Garcia would admit drinking one beer earlier in the evening, this would not signal the subsequent impairment admission. Garcia testified that he had had the beer around 6:00 to 6:30 p.m. Corporal Potter stopped him several hours later at approximately 1:00 a.m. Evidence of a single beer earlier in the evening might help explain Corporal Potter's testimony that he smelled alcohol, and it would be consistent with Corporal Potter's testimony that Garcia had admitted to drinking. But one beer would not ordinarily cause impairment several hours later.

Because we do not know what Garcia and his counsel discussed concerning his testimony or what Garcia told his counsel happened the night of his arrest, we cannot conclude that counsel knew Garcia would essentially confess and, therefore, cannot conclude counsel was constitutionally ineffective. Once Garcia testified as he did, counsel was forced to acknowledge it during his closing. Suggesting that Garcia may have misunderstood the question was not unreasonable.[1]

But even if we assume counsel's representation was constitutionally deficient, the record does not establish the requisite harm because the evidence of Garcia's guilt was overwhelming. *See Washington v. State*, 771 S.W.2d 537, 545-46 (Tex. Crim. App. 1989) (even if counsel's failure to object was outside the range of professional competent assistance, overwhelming evidence of defendant's guilt made this error harmless). If Garcia had not testified, the jury would have had only Corporal Potter's unrefuted testimony that Garcia was driving on the wrong side of the road, that he ran a stop sign, and that he parked on the wrong side of the road. The jury would have had no response to Corporal Potter's testimony that Garcia smelled of alcohol, was unsteady, failed the

---

[1]Counsel argued:

> I think he had full use of all of his faculties. Of course, I can argue all of that again and again until I'm blue in the face and I'm sure Mr. Bruce is going to walk up here and talk about the confession that Mr. Garcia just gave you on the stand, I guess not once, but twice as to whether he was intoxicated or whether he had lost the normal use of his mental and physical faculties.
>
> The only thing I can argue is that Mr. Garcia did not understand me and could not follow my verbal questions just like he couldn't that night because I don't know if it's a problem with his – either the way that I posed the questions or whether he, in fact, was giving you a confession, I just don't know, ladies and gentlemen. I would have to say it's surprising to me, as it is, I'm sure, to all of you.

5

HGN test, would not or could not perform the other field sobriety tests, and was acting peculiarly. Garcia has not shown a reasonable probability that the jury would have returned a different verdict if it had heard only this evidence. Issue One is overruled.

IV. *Sufficiency of the Evidence*

Garcia argues that the evidence was legally and factually insufficient because there was no evidence of his specific blood alcohol level, but there was evidence that he suffered from numerous health problems and was taking a variety of prescription medications. We will apply the following well-recognized standards of review to appellant's sufficiency challenges. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

Garcia is correct that there is no evidence of his specific blood alcohol content. Garcia is incorrect to conclude that any blood alcohol level evidence was required. The indictment alleged that Garcia was intoxicated:

> [B]y reason of introduction of alcohol into his body, while he was operating a motor vehicle in a public place, to wit, a public street in said county, and the said defendant, by reason of such introduction of alcohol into his body, did not then and there have the normal use of his mental faculties, and he did not have the normal use of his physical faculties while so operating and driving said motor vehicle.

This indictment did not require proof of a specific blood alcohol content. The State was required to prove impairment caused by alcohol; and, even without regard to Garcia's testimony, Corporal Potter's testimony was legally and factually sufficient to establish this. Corporal Potter's description of Garcia's driving, the smell of alcohol on Garcia, the result of the HGN test, Garcia's statements and behavior at the scene and while en route to the jail, and an open beer bottle in Garcia's van that had apparently been set down when Garcia stopped, sufficiently established that

6

Garcia was driving while impaired due to alcohol consumption. This result was not altered when the evidence of Garcia's health problems and medications was considered. The jury was entitled to consider this evidence when, for example, it reviewed Garcia's performance on the field sobriety tests, but this evidence was not so compelling that the jury could have only returned an acquittal. Issues Two and Three are overruled.

V. *Holding*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

July 23, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.