**Markeas Fitzgerald SHAVERS,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–92–02835–CR.**

Court of Appeals of Texas,
Dallas.

June 30, 1994.

John H. Hagler, Dallas, for appellant.

Carolyn Fitz–Gerald Levin, Dallas, for appellee.

Before LAGARDE, BARBER and WHITTINGTON, JJ.

## OPINION

LAGARDE, Justice.

Markeas Fitzgerald Shavers appeals his convictions for murder.[1] After finding him guilty, the jury assessed his punishment at life imprisonment and a $10,000 fine for the murder of Christopher Jackson and at forty-seven years' imprisonment and a $10,000 fine for the murder of Juanita Jackson. On appeal, appellant brings eight points of error generally contending: (a) the evidence is insufficient to support his convictions; (b) the indictment cannot support both convictions; and that the trial court erred in (c) admitting certain evidence; (d) overruling appellant's motion for continuance; and (e) overruling appellant's *Batson* motion. Appellant also contends that error occurred when a witness revealed that appellant had failed a polygraph test. We sustain appellant's third point of error that the indictment cannot support both convictions. We vacate appellant's conviction for the murder of Juanita Jackson; we affirm appellant's conviction for the murder of Christopher Jackson.

The State brings two crosspoints contending that the trial court's judgment should be reformed to reflect (1) the murder of Christopher Jackson, and (2) the jury's deadly weapon finding. We overrule the first crosspoint as moot. We sustain the second crosspoint and reform the judgment to include the jury's deadly weapon finding.

### FACTUAL BACKGROUND

In two separate indictments, appellant was indicted for capital murder by multiple homicide. TEX. PENAL CODE ANN. § 19.03(a)(6)(A) (Vernon Supp.1994).[2] One indictment alleged that appellant shot and killed Juanita Jackson and, during the same criminal transaction, shot and killed Christopher Jackson. The other indictment alleged that appellant shot and killed Christopher Jackson and,

during the same criminal transaction, shot and killed Juanita Jackson.

Appellant was the boyfriend of Joan Brown. Brown's nephew, Dennis McGee, lived in Dallas. McGee's common-law wife was Juanita Jackson, one of the victims; Juanita's son was Christopher Jackson, the other victim.

Appellant and Brown had lived together in Biloxi, Mississippi. Their relationship was a turbulent one; they separated and got back together several times before moving together to Dallas. Brown decided to leave appellant. She was afraid to tell him she was leaving because he had told her that if she ever left him, he would kill her children, her mother, and her nephew, McGee. She told McGee she was leaving appellant, and they arranged for her to take the train to Sacramento, California the next day. A few days later, she telephoned appellant and told him she was at a battered women's shelter and would not return to him.

Appellant telephoned Brown's mother and McGee at all hours of the day and night demanding to know where Brown had gone. He tried to telephone Brown's twelve-year-old son at his school, but the boy refused to return appellant's call. When McGee told appellant to stop calling him, appellant did so, but he began going to McGee's house demanding to know where she was. Although McGee knew where Brown was, he told appellant he did not know. On one of these visits, appellant looked at McGee and told him, "somebody's life is going to change."

On February 27, 1992, the day of the murders, Wayne Turner, Dennis Reed, and Cornell Watkins drove to McGee's house to talk to McGee. They arrived at the house at about 5:00 or 5:15 p.m. Juanita told them McGee was not home, so they only stayed about five minutes.

---

1. Shavers was convicted of two murders based on one indictment containing one paragraph under one cause number; the trial court entered separate judgments, each bearing the same cause number.

2. Cite is according to Act of May 28, 1993, 73rd Leg., R.S., ch. 887, § 1, 1993 Tex.Gen. Laws 3529. Earlier in the session, the legislature re-numbered section 19.03 of the penal code to make the cite for this provision TEX. PENAL CODE ANN. § 19.03(a)(7)(A). *See* Act of May 26, 1993, 73rd Leg., R.S., ch. 715, § 1, 1993 Tex.Gen. Laws 2800, 2801. The legislature did not refer to chapter 715 when they amended section 19.03 in chapter 887.

At about 5:45 or 6:00 p.m., McGee arrived home and found Juanita lying on the floor wounded by a gunshot to the head. The children, Christopher and Stephanie, were missing. Juanita was carried by ambulance to a hospital where she died from the gunshot wound to the head.

The next morning, Stephanie was found wandering near a street, and the police were called. The police found Christopher's body nearby. He had been shot through the back of the head by a gun fired from a distance of one to three feet.

McGee told the police that appellant had made threats after Brown left him. The police went to appellant's apartment and asked if they could search his car and if he would talk to them about the murders. Appellant agreed to both requests. In the search of the car, the police found Christopher's fingerprint on the outside of one of the windows, and on a coat found in appellant's car, they found two hairs consistent with Christopher's hair. On the floor of the car, they found a hair fragment consistent with Christopher's hair. A hair fragment consistent with appellant's hair was found on Christopher's clothes. Traces of blood were found on appellant's shirt and pants, and blood stains were found on his shoes and boxer shorts. The blood stains were not large enough to permit "typing" or identification of genetic markers. The police took a "handwashing" of appellant at about 11:00 p.m. to determine whether appellant had recently fired a gun. The results were negative.

The bullets and spent shell casings found near the victims' bodies were fired by the same .25 caliber automatic handgun. Although the gun was never recovered, one of appellant's neighbors testified that appellant tried to borrow a .25 caliber gun from him. This neighbor refused to lend the gun to appellant because he feared appellant would commit suicide. The police tested that gun, but they determined it was not the murder weapon.

Two of appellant's cell mates testified that appellant told them that he had killed Christopher. One of the cell mates testified that appellant asked him "what it takes to beat a murder case." Appellant told his cell mate that he had gone to somebody's house to look for his girlfriend because her people were keeping her from him. He pulled a gun on a woman, and the gun went off accidentally, killing her. Appellant said "he had to take the witnesses. And then he had to kill them." Appellant told him he used a .38. The next day, appellant brought a newspaper clipping describing the murder and told his cell mate, "[S]ee, I told you I did it." The other cell mate to testify stated that appellant showed the newspaper to him and bragged about the crime. Appellant told this cell mate he would "do it again," and, "If anybody else mess [sic] with him, he'll do the same thing and do it again. He don't [sic] care."

## PROCEDURAL BACKGROUND

Appellant was indicted for the capital murder of Christopher Jackson. The aggravating element alleged was the murder of Juanita Jackson in the same criminal transaction.[3] *See* TEX. PENAL CODE ANN. § 19.-03(a)(6)(A) (Vernon Supp.1994). Paragraph five of the charge instructed the jury to determine first whether appellant was guilty of intentionally causing the death of Christopher Jackson by shooting him with a firearm and, during the same criminal transaction, intentionally[4] causing the death of Juanita

---

3. Appellant was also indicted for the capital murder of Juanita Jackson, with the murder of Christopher Jackson during the same transaction alleged as the aggravating element. While the State was presenting its case in chief, the trial court informed the State that he would not charge the jury on both indictments and insisted that the State elect one of the indictments to go to the jury. The State elected to have the jury charged under the indictment alleging the capital murder of Christopher Jackson. The trial court did not state its reason for requiring the election.

4. The indictment alleged that appellant committed the murders intentionally and knowingly, but the application paragraph for capital murder required the jury to find that appellant committed the murders intentionally. Sections 19.03(a)(6) and 19.02(b)(1) permit the murders to be committed intentionally or knowingly. Why the trial court charged the jury to find the intentional murder of both victims to convict appellant of capital murder instead of charging them on intentional or knowing murder is not clear.

Jackson by shooting her with a firearm. It further instructed that if the jury found appellant not guilty of capital murder, then they were to consider the lesser included offenses of the murders of Christopher Jackson and Juanita Jackson. In paragraph six, the jury was instructed that they were to convict appellant of the murder of Christopher Jackson if they found that appellant intentionally or knowingly[5] caused the death of Christopher Jackson by shooting him with a firearm but they had a reasonable doubt whether appellant, in the same criminal transaction, knowingly or intentionally caused the death of Juanita Jackson by shooting her with a firearm. In paragraph seven, the jury was instructed that they were to convict appellant of the murder of Juanita Jackson if they found that appellant intentionally or knowingly caused the death of Juanita Jackson by shooting her with a firearm but they had a reasonable doubt whether appellant, in the same criminal transaction, knowingly or intentionally caused the death of Christopher Jackson by shooting him with a firearm. The jury found appellant not guilty of the capital murder of Christopher Jackson, but found him guilty of the murder of Christopher Jackson and the murder of Juanita Jackson.[6]

At the punishment phase, special issues were submitted for the jury to determine whether appellant used or exhibited a firearm, a deadly weapon, during the commission or flight from either or both murders. The jury answered the special issues affirmatively as to both murders.

## SUFFICIENCY OF THE EVIDENCE

■ In his first point of error, appellant contends that the evidence is insufficient to support his conviction for the murder of Christopher Jackson. When reviewing the sufficiency of the evidence, this Court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). In making this determination, the reviewing court considers all the evidence including improperly admitted evidence. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991). Questions concerning the credibility of witnesses and the weight to be given their testimony are to be resolved by the trier of fact. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App. 1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The standard of review in a circumstantial evidence case is the same as in a direct evidence case. *Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex.Crim. App.1991).

■ In a jury trial, we review the sufficiency of the evidence under the jury charge as given. *Jones v. State*, 815 S.W.2d 667, 668 (Tex.Crim.App.1991) (per curiam). We compare the evidence to the charging instrument as incorporated in the jury charge. The indictment is directed to the defendant, and the charge is directed to the jury. *Benson v. State*, 661 S.W.2d 708, 713 (Tex.Crim.App. 1982). It is the jury charge that authorizes conviction. *See Jones*, 815 S.W.2d at 669–70.

Appellant argues that the evidence is insufficient because no eyewitness testified that appellant was involved in Christopher's murder. Appellant notes that the hairs found in his car and on Christopher could not

---

5. The two application paragraphs on murder do not take into account the possibility that the jury may have acquitted appellant of capital murder because they had a reasonable doubt as to whether he committed both murders intentionally instead of knowingly but still have found beyond a reasonable doubt that they were part of the same criminal transaction. The record does not disclose why the trial court charged the jury in this fashion.

6. The verdict forms stated that the jury found appellant guilty of Christopher's murder as *in-*

*cluded* in the indictment and guilty of Juanita's murder as *charged* in the indictment. Appellant was charged with the capital murder of Christopher, not the murder of Juanita. The offense of the murder of Juanita was a lesser-included offense of the capital murder charge. Why the verdict form stated that the murder of Juanita was *charged*, instead of *included*, in the indictment is not clear, nor is the effect of this misstatement. However, appellant does not argue that this was error or that he was harmed thereby. Accordingly, we do not address the issue.

be conclusively linked to Christopher or to appellant. Even if the hairs did belong to Christopher and appellant, they could have been placed inside the car and on Christopher through appellant's and Christopher's contact with Brown. The fact that Christopher's fingerprint was found on the outside of the window of appellant's car does not prove that Christopher was ever inside the car. The "handwashing" test was negative. Appellant also notes that the blood tests failed to show that the blood on appellant's clothes matched Christopher's blood.

Although the physical evidence in this case is sparse, several circumstances tend to link appellant to the offense. Appellant was trying to acquire a .25 caliber gun the day of the shootings. Appellant was angry with McGee, Juanita's common-law husband; Juanita was Christopher's mother. Appellant's cell mates testified that appellant bragged to them about committing the crime. One of the cell mates testified that appellant told him he pulled a gun on a woman and that it went off accidentally hitting her. Appellant told the cell mate he had to "take" the witnesses and kill them. The next day, appellant showed the cell mates the newspaper story on the killing and bragged to them about killing the boy. Appellant argues that the cell mates are not credible because they are convicted felons who stood to gain from their testimony by having had pending charges dismissed or by having their parole chances improved. The cell mates denied benefiting from their testimony.

The determination of the credibility of the witnesses is an issue for the jury, not the appellate court. The jury resolved that issue against appellant. We hold that the evidence is sufficient to convict appellant of the murder of Christopher Jackson. We overrule appellant's first point of error.

## TWO MURDER CONVICTIONS FROM ONE CAPITAL MURDER INDICTMENT

■ In his third point of error, appellant contends that the conviction for the murder of Juanita Jackson must be vacated because the indictment alleged only the capital murder of Christopher Jackson. Appellant argues that both convictions cannot stand because the two offenses constitute misjoinder.

■ It is a well-settled common-law rule in Texas that unless some statutory or judicial exception applies, one indictment can result in no more than one conviction and one punishment. *Ex Parte Siller*, 686 S.W.2d 617, 618 (Tex.Crim.App.1985). Thus, both of appellant's convictions cannot stand unless some statutory or judicial exception to this "settled law" applies in this case. *See Ex Parte Siller*, 686 S.W.2d at 618; *see also Drake v. State*, 686 S.W.2d 935, 939 (Tex. Crim.App.1985) (plurality op.).

■ Article 21.24(a) of the code of criminal procedure is a statutory exception to the rule of only one conviction per indictment. That statute permits joinder of more than one offense in one indictment only when (1) the offenses are committed pursuant to the same transaction or pursuant to two or more connected transactions or constitute a common scheme or plan *and* (2) each offense is stated in a separate count. Tex.Code Crim.Proc. Ann. art. 21.24(a) (Vernon 1989). No paragraph of an indictment may charge more than one offense. Tex.Code Crim.Proc.Ann. art. 21.24(b) (Vernon 1989). When these provisions are violated in a manner that results in the defendant being convicted of more than one offense based on one indictment, the defendant suffers harm. *Wood v. State*, 822 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1991), *vacated on other grounds*, 828 S.W.2d 13 (Tex.Crim.App.1992); *cf. Ex Parte Siller*, 686 S.W.2d at 617. Therefore, an indictment can allege more than one offense, but the allegations must be stated in separate counts and paragraphs. Convictions on the offenses properly joined in one indictment are valid. *See O'Hara v. State*, 837 S.W.2d 139, 142 (Tex.App.—Austin 1992, pet. ref'd); *Lucas v. State*, 721 S.W.2d 467, 468 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

■ Misjoinder does not occur due to a charge stating lesser included offenses of the main charge. *Washington v. State*, 771 S.W.2d 537, 547 (Tex.Crim.App.), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989); *Wood*, 822 S.W.2d at

217. Thus, an indictment is not void on its face because it alleges the offense of capital murder, which includes lesser murder offenses, because the capital murder offense and the included murder offenses are the same offense. *See Washington*, 771 S.W.2d at 547; *see also Ex parte Drewery*, 710 S.W.2d 148, 152 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

In this case, the indictment alleges the capital murder of Christopher Jackson. The aggravating element alleged is the murder of Juanita Jackson in the same criminal transaction. Thus, although the indictment states the offenses of murder of Christopher Jackson and murder of Juanita Jackson, separate and distinct offenses, the two offenses are combined to form the one charged offense of the capital murder of Christopher Jackson. The indictment charged appellant with only one offense: the capital murder of Christopher Jackson.

Appellant, however, was acquitted of the charged offense of capital murder of Christopher Jackson. Appellant's two convictions result from the charged offense including two lesser offenses. Whether misjoinder occurs when a defendant is acquitted of the charged offense and the jury is instructed on two different lesser included offenses, neither of which is included in the other, has not been directly addressed by any Texas court.

The State argues that multiple convictions from a single indictment are permitted. The State cites to article 42.01, section 1(6), (13), and (14) of the code of criminal procedure. TEX.CODE CRIM.PROC.ANN. art. 42.01, § 1(6), (13), (14) (Vernon Supp.1994). These provisions are part of the required information in a criminal judgment and provide for a single judgment containing multiple convictions. The State also cites *Lucas v. State*, which permitted two aggravated robbery convictions, alleged in separate counts, from one indictment. *Lucas*, 721 S.W.2d at 468. These authorities, however, stand for the proposition that a statutory exception exists to the common-law rule of one conviction per indictment. The exception in *Lucas* was the joinder rule. There, the two offenses were properly alleged in separate counts and were part of the same criminal episode. Thus the joinder exception applied. Although these authorities support the fact that a single indictment can support multiple convictions, they do not resolve the issue of whether a single indictment containing only one paragraph and charging only one offense can support multiple convictions for the lesser offenses included in the charged offense when neither of the lesser offenses is included in the other.

The State also cites *Vuong v. State*, 830 S.W.2d 929 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992), in support of its argument that both convictions are valid. In *Vuong*, the defendant was charged with capital murder by multiple homicide under section 19.03(a)(6) of the penal code. TEX. PENAL CODE ANN. § 19.-03(a)(6) (Vernon Supp.1994). The trial court charged the jury on capital murder and on the lesser included offenses of intentional murder and involuntary manslaughter of each victim. *Id.* at 939. The jury found the defendant guilty of capital murder. The State asserts that *Vuong* is authority that both convictions in this case are valid. However, the issue in *Vuong* was the order of the offenses in the charge, not the propriety of multiple convictions from a single paragraph of a single indictment. *Id.* Because the jury found appellant guilty of capital murder, it never reached the issue of whether appellant was guilty of one or more of the lesser-included offenses. Thus, the issue in this case was not before the court in *Vuong*. Furthermore, because the trial court's charge is not set out in the opinion, we cannot determine whether the charge permitted multiple convictions as it does in this case. *Vuong*, therefore, does not support the State's argument.

The indictment here charged appellant with capital murder and, included therein, the two lesser offenses of murder. For both murder convictions to be valid, each must fit into an exception to the rule of one conviction per indictment. The article 21.24 exception does not apply in this case because the two murders are not charged in separate counts and paragraphs as required by article 21.24. *See* TEX.CODE CRIM.PROC.ANN. art. 21.24 (Vernon 1989). The State does not identify

any other possible exception to the one conviction per indictment rule. Improperly obtaining two judgments of conviction from one indictment constitutes fundamental error. *See Ex Parte Pena,* 820 S.W.2d 806, 808 (Tex.Crim.App.1991). Accordingly, we hold that both convictions cannot stand. One of the judgments of conviction must be vacated.

■ When one of two convictions from a single indictment must be vacated, the court of criminal appeals has held that the less "serious" offense should be vacated. *Id.* at 809. The determination of which offense is less serious involves consideration of the degree of the offenses, the sentences imposed, firearm findings, and differences in parole eligibility. *Id.* In this case, both convictions were for murder, thus both were first degree felonies. However, appellant was sentenced to life imprisonment and a $10,000 fine for the murder of Christopher Jackson and forty-seven years' imprisonment and a $10,000 fine for the murder of Juanita Jackson. Because of the difference in sentences, the murder of Juanita Jackson is the "less serious" offense. Accordingly, we sustain appellant's third point of error and vacate the judgment of conviction for the murder of Juanita Jackson.[7]

## MOTION FOR CONTINUANCE

■ In his fourth point of error, appellant contends that the trial court erred in denying his motion for continuance. Appellant filed an unsworn motion for continuance asserting that he did not have sufficient time to prepare for trial due to the prosecutor's recent disclosure of a confession made by appellant to a cell mate. During a pretrial hearing, defense counsel requested a continuance because he had not received photographs of the crime scene or other physical evidence obtained by the investigators in the case. During the trial, defense counsel presented an oral motion for continuance based on the State's intent to present newly discovered evidence, one of the hairs found in appellant's car. The trial court denied the motions for continuance.

7. Because we vacate appellant's conviction for the murder of Juanita Jackson, we need not reach appellant's second point of error contend-

To present an issue for review from the trial court's overruling of a motion for continuance, the motion must have been made in writing and sworn to by a person having personal knowledge of the facts relied on for the continuance. TEX.CODE CRIM.PROC.ANN. arts. 29.03, 29.08 (Vernon 1989); *Montoya v. State,* 810 S.W.2d 160, 176 (Tex.Crim.App. 1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991). Appellant's motion based on the newly disclosed confession was in writing, but it was not sworn to. The other bases for continuance were neither written nor sworn to. Accordingly, no issue is presented for our review. We overrule appellant's fourth point of error.

## VOIR DIRE

■ In the seventh point of error, appellant contends that the prosecutor used peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and article 35.261 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989).

■ To invoke the protection of *Batson* and article 35.261, a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant may establish a prima facie case of discrimination by showing:

1. that he is a member of an identifiable racial group;

2. that the prosecutor has exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race; and

3. that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremembers on account of their race.

ing that the evidence is insufficient to support his conviction for Juanita Jackson's murder.

TEX.CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989); *see Powers v. Ohio*, 499 U.S. 400, 409, 111 S.Ct. 1364, 1369–70, 113 L.Ed.2d 411 (1991); *Mead v. State*, 819 S.W.2d 869, 870 (Tex.Crim.App.1991); *see also Batson*, 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim.App.1987); *C___ E___ J___ v. State*, 788 S.W.2d 849, 853 (Tex.App.—Dallas 1990, writ denied). When a defendant establishes a prima facie case, the burden shifts to the State to come forward with racially neutral explanations of why it exercised peremptory challenges against the veniremembers. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton*, 724 S.W.2d at 65. The trial judge must then examine each of the prosecutor's reasons for striking a potential juror within the circumstances of the particular case to determine whether the neutral explanation for the strike is only a pretext for a racially motivated peremptory challenge. In making this determination, the trial judge must ascertain whether the prosecutor has articulated a "clear and reasonably specific" explanation of "legitimate reasons" for striking the veniremember. *See Batson*, 476 U.S. at 98, 106 S.Ct. at 1724; *C___ E___ J___*, 788 S.W.2d at 855. The trial court's determination that the prosecution has rebutted the prima facie case will not be reversed on appeal unless it is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Crim.App.1989) (op. on reh'g). In other words, a reviewing court must not reverse a trial court's *Batson* decision unless the reviewing court is left with a firm conviction that a mistake has been committed. *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied*, — U.S. —, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Whitsey*, 796 S.W.2d at 721.

Appellant contends that the State peremptorily struck prospective jurors Mathis and Calhoun for racially motivated reasons. The prosecutor stated he used a peremptory strike on Mathis because her son was currently in prison for unlawful use of a motor vehicle. The prosecutor peremptorily struck Calhoun because her brother had been convicted of murder. The use of peremptory strikes on prospective jurors who have relatives who have been convicted or charged with criminal offenses is legitimate and racially neutral. *See, e.g., Beasley v. State*, 838 S.W.2d 695, 700 (Tex.App.—Dallas 1992, pet. ref'd), *cert. denied*, — U.S. —, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993); *Garcia v. State*, 833 S.W.2d 564, 567 (Tex.App.—Dallas 1992), *aff'd*, 868 S.W.2d 337 (Tex.Crim.App.1993). Appellant did not present any evidence to rebut the State's proof that the prosecutor's peremptory challenges were racially neutral. We overrule appellant's seventh point of error.

## ADMISSION OF PHOTOGRAPHS

In his fifth and sixth points of error, appellant contends that the trial court erred in overruling his objections to the admission of two photographs, State's exhibits 58 and 69. Appellant objected that exhibits 58 and 69 are inadmissible because their probative value is outweighed by the danger of unfair prejudice. Appellant also objected to exhibit 58 on the grounds that it was "not probative," *i.e.*, irrelevant. The trial court overruled the objections and admitted the photographs into evidence.

### Relevance

■ Appellant contends that exhibit 58 is irrelevant. Exhibit 58 is a close-up photograph of the back of Christopher Jackson's head showing the bullet's entry wound. The picture was taken at the crime scene where Christopher's body was found. Appellant asserts that the exhibit is irrelevant because it was undisputed that the Christopher had died as a result of a gunshot wound. The State, however, had to prove that Christopher was killed by being shot with a firearm. This photograph tends to make the existence of the fact of Christopher's cause of death more probable than it would be without the evidence. *See* TEX.R.CRIM.EVID. 401. The fact that the photograph may be cumulative of other evidence does not make the evidence irrelevant. *See* TEX.R.CRIM.EVID. 403 ("Although *relevant*, evidence may be excluded if its probative value is substantially outweighed by the ... needless presentation of cumulative evidence." (Emphasis added.)). The trial court did not err in overruling appellant's objection that exhibit 58 was "not probative."

## Probative Value Outweighing Danger of Unfair Prejudice

Appellant asserts that even if relevant, the probative value of exhibits 58 and 69 was greatly outweighed by the danger of unfair prejudice. The admissibility of allegedly inflammatory photographs is governed by the rules of evidence.

 In determining admissibility of photographs under rule 403, the following factors are relevant for consideration:

the number of exhibits offered;

their gruesomeness, detail, and size;

whether they are black and white or color;

whether they are close-up;

whether the body is naked or clothed; and

the availability of other means of proof and circumstances unique to each individual case.

*Hicks v. State*, 860 S.W.2d 419, 426 (Tex. Crim.App.1993), *cert. denied*, — U.S. —, 114 S.Ct. 2725, 129 L.Ed.2d 848 (1994); *Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). A photograph must have some probative value that is not substantially outweighed by its inflammatory nature. *Hicks*, 860 S.W.2d at 426; *Long*, 823 S.W.2d at 272. The court of criminal appeals has generally held that photographs are admissible when verbal testimony as to the matters depicted in the photos is also admissible. *Hicks*, 860 S.W.2d at 426. The fact that the scene depicted in the photograph is gory and gruesome does not make the photograph more prejudicial than probative when the crime scene is gory and gruesome. *See Long*, 823 S.W.2d at 273 (photographs of hatchet-murder victims).

### Exhibit 58

Exhibit 58 depicts the gunshot wound to the back of Christopher Jackson's head. Appellant does not explain why this photograph is inflammatory. The exhibit is probative of the violent nature of the crime, but it is not so gruesome as to be unfairly prejudicial. Applying the factors listed above, we hold that the trial court did not err in overruling appellant's objections to exhibit 58. We overrule his fifth point of error.

### Exhibit 69

 Exhibit 69 is a photograph of the body of Christopher Jackson lying face-up on an autopsy table in the medical examiner's office. The photograph depicts Christopher from the head to the knees. He is clothed, but grass stuck to dried blood covers the right half of his face and is stuck to his hair and shirt.

At trial, the State offered the clothes found on Christopher Jackson into evidence. Appellant objected on the grounds that the State had not adequately proven the chain of custody. The State offered exhibit 69 to show the clothes appellant was wearing when he was brought to the medical examiner's office. In ruling on the admissibility of exhibit 69, the trial court stated, "I do believe that State's 69 shows a portion of the clothing that is not shown in any other photograph. So I'm going to overrule the objection on 69 and admit State's 69 over objection." Applying the factors listed above, we hold that the trial court did not err in determining that the photograph's probative value was not greatly outweighed by the danger of unfair prejudice. *See Hicks*, 860 S.W.2d at 427 (autopsy photograph admissible despite depiction of "postmortem animal scavenging"). We overrule appellant's sixth point of error.

## POLYGRAPH TESTIMONY

In his eighth point of error, appellant contends "error was committed when the police officer's non-responsive answer and the prosecutor's question revealed to the jury that the appellant had failed to pass a polygraph test."

During defense counsel's cross-examination of Detective L'Huiller, defense counsel asked the witness how long he talked to appellant. Detective L'Huiller answered, "I talked to him approximately three and a half, four hours before his polygraph test and another hour afterward." Defense counsel did not object to the mentioning of the polygraph. Four questions later in the defense's cross-examination of L'Huiller, the following occurred:

Q. ... Your last answer to the point or somewhere was on the subject of how long you talked to Mr. Shavers, and you said so many hours before a polygraph?

A. That's correct.

Q. And then a couple hours later?

A. An hour or so later.

Q. How many times did you polygraph him?

A. I think they normally run the test twice.

Q. Well, your personal knowledge, since you're the chief. How many times overall have you polygraphed him?

A. Have I polygraphed him?

Q. No. Has anyone polygraphed him under your direction?

A. One session, which consists of two tests.

Q. I know that. Just how many times have you polygraphed him? More than once?

A. One time.

Q. One time.

A. One time.

Q. How many sittings does that require?

A. One.

Q. One?

A. Correct.

During re-examination of Detective L'Huiller by the State, the prosecutor moved on to the issue of the polygraph test:

Q. Det. L'Huiller, my mind, to tell you the truth, was drifting far and away from here a few minutes ago until my ears picked up on the word polygraph and then my ears perked up. That is part of your investigation of this case?

A. That's correct.

Q. From all that you have been able to muster in this case, is there any evidence whatsoever, that shows—

[Defense Counsel]: Your Honor, I'll object. I would like to approach the bench on that.

The Court: Approach the bench, Counsel, both counsel, all three.

[Off the record discussion]

The Court: Counsel, let's move to another area.

[Prosecutor]: Judge, then I have no further questions of this detective. I pass this witness.

The Court: [Defense Counsel], anything further? Do you have anything further at this time?

[Defense Counsel]: Just one motion subsequent to his last question that the jury be instructed to disregard that question because of its inference of the results of the polygraph which are not admissible.

The Court: The jury is instructed not to consider the last question of the prosecutor before we had our bench conference. The jury is also instructed not to speculate about what the answer may have been had the question been asked. You cannot consider the answer nor speculate about the answer in this case for any reason whatsoever.

[Defense Counsel]: May I approach one more time? This is very important.

The Court: [Prosecutor].

[Off the record discussion]

The Court: Members of the jury, for your information, a polygraph test or the results of that test is not admissible into evidence in courts of this state. Whether that test is passed or whether it's failed, it's just not admissible.

[Defense Counsel]: And I ask for a mistrial.

The Court: Denied.

Appellant's point of error contains two contentions: (1) that error occurred when Detective L'Huiller's nonresponsive answer revealed that appellant had taken a polygraph test; and (2) that error occurred when the prosecutor's question inferentially revealed to the jury that appellant failed the polygraph test. We address each contention separately.

### Nonresponsive Answer

■ As for appellant's first contention, appellant did not object when Detective L'Huiller mentioned that appellant had taken a polygraph test. Instead of objecting to the witness's nonresponsive mentioning of the polygraph test, appellant further questioned

the witness about the number of polygraph tests appellant took. Appellant's failure to object resulted in waiver of any error resulting from the witness's revelation that appellant took a polygraph test. Tex.R.App.P. 52(a); *Banda v. State,* 727 S.W.2d 679, 682 (Tex.App.—Austin 1987, no pet.).

### Inferential Revelation of Results

 Appellant's second contention is that error occurred from the prosecutor's incomplete question to the witness, which appellant maintains revealed to the jury the results of the polygraph test. When a defendant immediately objects to testimony that inferentially reveals the results of a polygraph test of the defendant or other crucial witness, the harm is so great that it cannot be cured by an instruction to disregard. *Nichols v. State,* 378 S.W.2d 335, 337–38 (Tex.Crim.App.1964); *Banda,* 727 S.W.2d at 682. In such circumstances, the defendant is entitled to a mistrial. However, if the defendant fails to object immediately, the error is waived. *Banda,* 727 S.W.2d at 682.

Assuming, without deciding, that the results of the polygraph test were revealed to the jury,[8] they were first revealed, not by the objected-to question, but either by the witness's nonresponsive answer or by the prosecutor's unobjected-to question that the defendant's polygraph was part of the investigation of the case. Because there was no timely objection, error was waived. *Banda,* 727 S.W.2d at 682. We overrule appellant's eighth point of error.

### STATE'S CROSSPOINTS

In its first crosspoint, the State contends that the record should be reformed to reflect a judgment of conviction for the murder of Christopher Jackson. At the time the State filed its brief, the record on appeal did not contain a judgment for the murder of Christopher Jackson. A supplemental transcript has subsequently been filed containing a judgment of conviction for the murder of Christopher Jackson. Because the record on appeal now contains the judgment, we overrule the State's first crosspoint as moot.

 In its second crosspoint, the State contends that the judgments of conviction should be reformed to contain deadly weapon findings. Because we vacate the judgment for the murder of Juanita Jackson, the only judgment before us is the judgment for the murder of Christopher Jackson. The judgment states, "Findings on use of deadly weapon: None." This Court has the authority to reform a judgment to include an erroneously omitted deadly weapon finding. *Asberry v. State,* 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). In this case, the jury made a deadly weapon finding by finding appellant guilty of murder as included in the indictment, which included an allegation that appellant used a firearm, which is a deadly weapon per se. The jury also answered a special issue finding beyond a reasonable doubt that appellant "used or exhibited a firearm, a deadly weapon, during the commission, or the immediate flight therefrom, of the offense for which he has been found guilty in this case." Accordingly, we sustain the State's second crosspoint and reform the judgment by deleting "None" and adding the phrase: "The jury finds beyond a reasonable doubt that Markeas Fitzgerald Shavers used a firearm, a deadly weapon, during the commission of the offense of murder." *See Asberry,* 813 S.W.2d at 531.

### SUMMARY

We vacate the judgment of conviction for the murder of Juanita Jackson. We reform the judgment of conviction for the murder of Christopher Jackson to reflect the jury's deadly weapon finding. As reformed, we

---

**8.** This case is different from the usual case involving inferential disclosure of polygraph results. Ordinarily, inferential disclosure occurs when the prosecutor asks whether the defendant or a witness took a polygraph test. *See, e.g., Nichols,* 378 S.W.2d at 337. The disclosure is presumed because the jury can assume that the prosecutor would not be asking about the poly-

graph if the results were not in the State's favor. In this case, however, defense counsel questioned the detective about the polygraph before the State broached the subject. Whether the presumption of disclosure would apply under these facts is not clear from the case law. Because we hold that the error, if any, was not preserved, we do not reach this issue.

affirm the trial court's judgment for the murder of Christopher Jackson.