OPINION HEADING PER CUR 




 NO. 12-02-00384-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




KENDRICK NOLLEY,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS






MEMORANDUM OPINION


 A jury convicted Appellant Kendrick Nolley of burglary of a habitation and assessed his
punishment at sixty years of imprisonment, based partially upon an enhancement from a 1998
burglary conviction. In two issues, Appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. We affirm.


Factual Background


 On May 21, 2002, Jama Garcia ("Garcia") was convalescing from a recent surgery and was
at her home on the Old Gladewater Highway in Smith County, Texas. She had been ordered by her
doctor to stay in bed to allow the incision to heal, particularly since the staples had only been
removed two days earlier. At 11:00 p.m. Garcia heard a loud knock at her front door. Because of
her condition, it took her a while to get off the bed and head toward her front door. By the time she
did so, the knocking had ceased. All of a sudden, someone kicked in her back door. She turned
around and when she pulled back a curtain leading into her hallway, she encountered a large black
man with short hair. She estimated the man ("Appellant") was six feet two inches in height and
weighed approximately 275 pounds. When Garcia attempted to retreat into her bedroom, Appellant
cut her off and pushed her onto her bed.

 Garcia attempted to initiate a conversation with Appellant by asking him his name. After
Appellant looked around, he told Garcia he was going to take her stereo. Garcia then attempted to
dial 911. When Appellant realized what Garcia was doing, he jumped on her and forcibly took the
phone from her. 

 Appellant then began taking Garcia's stereo out to his car, which was parked next to Garcia's
front porch. Garcia again got off her bed and went to the front door to observe Appellant. Appellant
asked her to bring him the remaining stereo speaker, but she refused. He then reentered the house
through the front door, pushing her aside to take the speaker. Garcia asked him to return her phone,
which he did. Garcia then observed Appellant driving off with her stereo in a "small gray, silver-looking car." She then reported the burglary to the appropriate law enforcement authorities. The
Smith County Sheriff's Office investigated the burglary, but made no immediate arrest. 

 Almost seven weeks later Garcia was grocery shopping with her boyfriend, Esteban Gutierrez
("Gutierrez"), at Vineyard's grocery store in Liberty City. (1) An acquaintance, Tami Smith ("Smith"),
spoke to Garcia in one of the grocery store's aisles. Garcia testified that following this encounter
with Smith, she all of a sudden felt strange. When she turned down the next aisle, she saw the man
with Smith and realized that he was the same man who had burglarized her home on May 21. She
confronted Appellant about the burglary, but he denied that he knew her. 

 Garcia and Gutierrez followed Appellant from the grocery store parking lot to a house that
belonged to Appellant's mother. Garcia then contacted the Smith County Sheriff's Department
regarding this encounter. The following day, July 8, a Smith County Sheriff's Office detective,
Randy Meadows ("Meadows"), met with Garcia and showed her a lineup of six black men. Garcia
immediately pointed to Appellant as the man who had burglarized her home. Further, Meadows
observed a small gray - silver car, owned by Appellant's mother and located at her house. Appellant
lived at this house as well.

 Appellant was indicted for burglary of a habitation. Appellant pleaded "not guilty", but the
jury found him guilty of burglary of a habitation. Thereafter, on Appellant's election, the jury
determined his punishment. After pleading "true" to the 1998 burglary conviction, Appellant was
sentenced to sixty years of imprisonment. Appellant timely filed this appeal and in two issues
challenges the legal and factual sufficiency of the evidence to support his conviction.


Standard of Review


 When an appellant asserts that the evidence is both legally and factually insufficient, an
appellate court must first determine whether evidence presented at trial is legally sufficient to support
the jury's verdict. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). The standard for
reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most
favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt
the essential elements of the offense charged. Jackson v. Virginia, 433 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 560 (1979). The jurors are the exclusive judges of the facts, the credibility
of the witnesses, and the weight to be given the testimony of each witness. Arnold v. State, 36
S.W.3d 542, 545 (Tex. App.-Tyler 2000, pet. ref'd). The evidence is measured for sufficiency
against the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that
"accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which the defendant
was tried." Id. 

 Once an appellate court has determined that the evidence is legally sufficient to support the
verdict, the court must then proceed to review the evidence for factual sufficiency. Clewis, 922
S.W.2d at 133. For a factual sufficiency review, an appellate court looks at all of the evidence to
determine whether it is so weak as to make the verdict clearly wrong and manifestly unjust or
whether the adverse finding is against the great weight and preponderance of the available evidence. 
Sims v. State, 99 S.W.3d 601, 601 (Tex. Crim. App. 2003). 


Eyewitness Testimony


 A person commits burglary of a habitation if, without the effective consent of the owner, he
enters a habitation that is not then open to the public with the intent to commit a felony, theft, or an
assault. Tex. Pen. Code Ann. § 30.02(a)(1) (Vernon 2003). Theft occurs when one person
unlawfully appropriates another's property with the intent of depriving the owner of the property. 
Tex. Pen. Code Ann. § 31.03(a) (Vernon 2003). Garcia testified that Appellant entered her locked
home and took her stereo against her will. 

 Appellant asserts that there is no direct evidence linking him to the theft of Garcia's stereo.
He points out that his fingerprints were not found in Garcia's home and that the stereo was never
recovered. We disagree that physical evidence is required to link the accused to the crime scene. 
See Shavers v. State, 881 S.W.2d 67, 73 (Tex. App.-Dallas 1994, no pet.). Eyewitness testimony
positively identifying a perpetrator of a crime is sufficient to show a connection between the accused
and a crime. See Loserth v. State, 985 S.W.2d 536, 539-40 (Tex. App.-San Antonio 1998, pet.
ref'd). 

 Appellant points out that at the time of the offense, Garcia was unable to provide any
substantive information by which investigators could identify any suspects. Therefore, his argument
continues, Garcia's subsequent identification of Appellant seven weeks after the offense is legally
and factually insufficient to support his conviction. Therefore, in conducting our sufficiency review,
we must determine whether the eyewitness identification here is reliable. See Manson v.
Brothwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140 (1997) (Reliability is the
linchpin in determining the admissibility of identification testimony.) We review reliability of the
evidence by looking at the totality of the circumstances. See Webb v. State, 760 S.W.2d 263, 269
(Tex. Crim. App. 1988). The following five nonexclusive factors should be weighed in assessing
reliability under the totality of the circumstances: 1) the opportunity of the witness to view the
criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's
prior description of the criminal; 4) the level of certainty demonstrated by the witness at the
confrontation; and 5) the length of time between the crime and the confrontation. Loserth v. State,
963 S.W.2d 770, 772 (Tex. Crim. App. 1998). 

 The first factor is the opportunity of the witness to view the criminal at the time of the crime. 
Garcia confronted Appellant soon after he entered her home by knocking down her back door. She
initiated a conversation with him. He then pushed her onto the bed. He later jumped on her while
she was on the bed in order to wrestle her phone away from her. He asked her to hand the stereo
speaker to him so that he would not have to make a second trip into the house. He pushed her aside
while she was standing in her front door in order to take the remainder of the stereo out to his silver
car. Finally, he handed her phone back to her before driving off. Garcia, therefore, had several
opportunities to view Appellant in very close proximity. Moreover, in their conversations, she was
able to hear the timbre of his voice. 

 The second factor is the witness's degree of attention. Witnesses who are victims rather than
casual observers are generally believed to have a greater degree of attention. Brown v. State, 64
S.W.3d 94, 101 (Tex. App.-Austin 2001, no pet.). Here, Garcia remembered a number of
Appellant's characteristics, including his weight, height, race, and short hair. This suggests a high
level of attention while the burglary was being committed. 

 The third factor is the accuracy of the witness's prior description of the criminal. Garcia
identified Appellant in the courtroom in front of the jury. The jurors are the exclusive judges of the
credibility of a witness, and we assume they matched Garcia's prior description of Appellant with
what they saw in the courtroom.

 The fourth factor is the level of certainty demonstrated by the witness at the confrontation. 
Garcia testified that she immediately pointed to Appellant out of the six individuals shown to her 
during the photographic lineup on July 8. Meadows, the detective who conducted the photographic
lineup at the Smith County Sheriff's Office, also testified that Garcia immediately identified
Appellant when shown the photographic lineup. Garcia never waivered in her identification of
Appellant.

 Finally, the fifth factor is the length of time between the crime and the confrontation. Here,
the confrontation occurred about seven weeks after the crime had been committed. Confrontations
which have occurred five months after the crime have been determined to be sufficient for a reliable
identification. See Webb v. State, 760 S.W.2d 263, 273 (Tex. Crim. App. 1988); see also Brown, 
64 S.W.3d at 101 (a period of eight months between the crime and the confrontation had no
detrimental effect on the accuracy or consistency of the victim's identification). All of the factors
enumerated in Loserth militate in favor of a conclusion that no substantial likelihood of
misidentification exists in this case. Viewing the evidence in the light most favorable to the verdict,
we hold that there is sufficient evidence from which the jury could have concluded beyond a
reasonable doubt that Appellant committed the burglary of Garcia's home. 

 Neither does the record support Appellant's challenge to the factual sufficiency of the
evidence. Appellant asserts that Smith testified that the gray - silver car was actually a four-door
car instead of a two-door car as Garcia had initially told the police. However, Garcia testified at trial
that she said the car was so small that she assumed that it must have only been a two-door car rather
than a four-door car. We further note that when Smith testified, she described the gray - silver car
as "little."

 Further, Appellant contends that Smith's testimony regarding the fact that the gray - silver
car owned by Appellant's mother had not been driven since the beginning of 2002 was un-
controverted. Smith testified that she had never seen Appellant drive the gray - silver car and it
belonged to his sister. Smith's testimony is some evidence that the gray - silver vehicle used in the
burglary may not be the same gray - silver vehicle found where Appellant lived. However, this
testimony does not render all of the remaining evidence so weak as to make the verdict clearly wrong
and manifestly unjust or cause us to conclude that the verdict is against the great weight and
preponderance of all of the available evidence. We hold that the evidence is both legally and
factually sufficient to support the verdict and therefore overrule Appellant's first and second issues.


Conclusion


 Having concluded that the evidence is legally and factually sufficient to support Appellant's
conviction, we affirm the trial court's judgment.


 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered April 14, 2004. 

Panel consisted of Worthen, C.J. and Griffith, J.

DeVasto, J., not participating.








(DO NOT PUBLISH)


1. The burglary occurred at Garcia's home which is near the boundary line dividing Gregg and Smith
Counties but is located in Smith County. Liberty City is near this boundary, but is on the Gregg County side of the
line.