MEMORANDUM OPINION




No. 04-02-00898-CR



Dwayne CORONA,


Appellant



v.



The STATE of Texas,


Appellee



From the 290th Judicial District Court, Bexar County, Texas


Trial Court No. 2002-CR-4130


Honorable Sharon MacRae, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: June 9, 2004


AFFIRMED

 Dwayne Corona was convicted by a jury of murder and sentenced to life imprisonment. On
appeal, Corona raises the following points of error: (1) the evidence is legally and factually
insufficient to support his conviction; (2) the trial court abused its discretion in admitting evidence
of an extraneous offense; and (3) the trial court abused its discretion in admitting photos depicting
the crime scene. We affirm the trial court's judgment.

Legal and Factual Sufficiency


 To determine the legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the verdict and ask if any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S.
307, 319 (1979). For a factual sufficiency review, an appellate court looks at all the evidence to
determine whether it is so weak as to make the verdict clearly wrong and manifestly unjust or whether
the adverse finding is against the great weight and preponderance of the available evidence. Sims v.
State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). Appropriate deference must be given to the
jury's decision to "prevent an appellate court from substituting its judgment for that of the fact
finder." Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). "[A]ny evaluation should not
substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given
to witness testimony." Id.

 Corona was indicted for the murder of Olga Garcia. Garcia died from multiple gunshot
wounds that were fired into her home on May 4, 2001, after she peeked out the window in response
to a knock on her door. Corona contends that the evidence is legally and factually insufficient to
support the jury's finding that he was the person who murdered Garcia.

 The State presented the testimony of Corona's cell mate, Martin Coons, who was in jail for
a parole violation. Coons testified that Corona told him that he "shot up a house with an Uzi," and
killed an elderly lady in the process. Corona told Coons that earlier in the day his younger brother
had been picked on, and his mother was verbally abused when she approached the people about it.
After confronting the people, Corona's mother called and asked him to deal with the people. Corona
told Coons that when he went over to the people's house it was raining. When he knocked on the
door, a lady appeared to be looking through a window. Corona told Coons that he discharged 15
to 30 rounds into the house. Corona stated he went to the house with a friend and fled the scene on
foot after firing the shots.

 Coons decided to contact the police after his parole was reinstated and he was released from
jail. Coons gave his statement to Detective Moffitt; he was not offered any deals in return for his
testimony. Coons testified that he decided to tell the police because the victim could have been
"anyone's mother, a defenseless woman," and Corona's story haunted and disturbed him.

 On cross-examination, Coons testified that he served three years in prison before he was
released on parole. Since being released, Coons' only parole violation was the violation for which
he was in jail at the time he met Corona. Coons stated that he did not join a prison gang for
protection. He testified that in his experience cell mates in prison often confided in each other about
their crimes. Coons conceded that some inmates might brag about their crimes to project a tough
image. Coons stated that he asked his mother to contact the police about the information he had
regarding Corona, but he did not initially tell his parole officer. Coons testified that his parole officer
did know that he was testifying in court regarding the matter, but that he had not previously told his
parole officer about the information at his parole reinstatement hearings. Coons admitted that he was
taking his usual anti-depressant medication, Wellbutrin, while in jail; however, his medication did not
have an emotional effect on him. Coons stated that the only side effect of the medication was
occasional insomnia. Coons admitted the reason he went to prison was due to his drug problems.
At the time Coons contacted the police, he was unaware that a reward was being offered for
information on Garcia's murder. Although he later became aware of the reward, he never knew the
amount of the reward.

 Detective Ebinger, the lead detective investigating Garcia's murder, testified that Garcia's
murder had received a lot of media attention; however, the police department had been very "tight-lipped" about the information it released. Detective Ebinger stated that the following information was
not released to the public: (1) ballistic tests revealed that the weapon was an Uzi-type gun; (2) at
least seventeen shell casings were found; (3) the investigation was focused on an argument between
Corona's mother and Garcia's neighbor; and (4) Corona was a suspect. Detective Moffitt stated that
Coons provided details regarding Garcia's murder that were not publicized.

 In addition, phone records from a cell phone that Corona either owned or used showed three
phone calls to Corona's mother before the murder and three phone calls to her after the murder.
Eyewitnesses testified they saw two men approach and then leave Garcia's house at the time of the
murder. The murder occurred during a heavy rainstorm. Witnesses testified that the shooting
occurred on the same day that Corona's mother had a verbal confrontation with Garcia's neighbors
about their son bullying Corona's brother, Mario, at the park. Corona's other brother, Angel, gave
a statement to police, in which he said that his mother called Corona on the day of the murder and
told him about the incident at the park involving Mario. Finally, evidence of an extraneous offense
was admitted in which Corona shot two men involved in a similar bullying incident with Mario, and
in which his mother had confronted the men and later called Corona to help. 

 Coons' testimony was clearly admissible. See Baldree v. State, 784 S.W.2d 676, 686 (Tex.
Crim. App. 1989); see also Corona v. State, Nos. 04-02-00861-CR & 04-02-00862-CR, 2004 WL
56922 at *2 (Tex. App.--San Antonio Jan. 14, 2004, pet. filed) (not designated for publication)
(holding Coons' testimony was admissible in prosecution of another charge against Corona).
Although Corona claimed that he told Coons only that he was being investigated for Garcia's murder
and gave Coons specific details based on what the detective told him and what he heard on the
neighborhood streets, we must defer to the jury's assessment of the credibility and weight of Coons'
testimony. See Martinez v. State, 129 S.W.3d 101, 106 (Tex. Crim. App. 2004). The detailed
information described by Coons, and the consistency between Coons' testimony and the testimony
of other witnesses, including the similarity between Garcia's murder and the other shooting in which
Corona was involved, lend credibility to Coons. The evidence is legally and factually sufficient to
support Corona's conviction. Corona's third and fourth points of error are overruled.

Extraneous Offense


 In his second point of error, Corona asserts that the trial court erred in admitting evidence of
another shooting and murder committed by Corona. Over Corona's objection, Coons testified that
Corona also told him about another murder he committed after Garcia's murder. Corona said that
his younger brother, Mario, who was overweight, was being laughed at as he attempted to chase an
ice cream truck down the street. After confronting the men, Corona's mother called him. Corona
arrived and approached the men with a .38 revolver. Corona told Coons that he shot one man in the
torso twice and shot another man in the chest twice. Corona then turned around and shot the first
man a third time. Corona spent the last round shooting at a couple of other individuals in front of the
house. Corona told Coons that one of the men he shot died and the other lived. After Coons
testified, the State called one of the shooting victims and an eyewitness to testify regarding the events
leading up to the shooting.

 We review a trial court's ruling on the admissibility of evidence under an abuse of discretion
standard. Montgomery v. State, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). Evidence of other
crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he
acted in conformity therewith. Tex. R. Evid. 404(b); Taylor v. State, 920 S.W.2d 319, 321 (Tex.
Crim. App. 1996). However, extraneous offense evidence may be admissible when relevant to prove
an elemental fact or an evidentiary fact of consequence to the determination of the action, such as
identity. Taylor, 920 S.W.2d at 321. When an extraneous offense is offered to prove identity, the
common characteristics of each offense must be so unusual and distinctive as to be like a "signature."
Id. Even if an extraneous offense is determined to be relevant, a trial court must exclude the evidence
if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid.
403; Id. at 322. In making this determination, the trial court should consider: 1) whether the ultimate
issue, e.g., identity, was seriously contested by the opponent of the evidence; 2) whether the State
had other convincing evidence to establish the ultimate issue on which the disputed evidence was
relevant; 3) the compelling nature, or lack thereof, of the evidence; and 4) the likelihood that the
evidence was of such a nature as to impair the efficacy of a limiting instruction. Id.

 In this case, the only contested issue at trial was Corona's identity as the shooter in Garcia's
murder. The extreme degree of similarity between the two murders made the evidence of the other
murder highly probative. In addition, without evidence of Corona's involvement in the other murder,
it would have been more difficult for the jury to resolve whether Coons was a credible witness.
Coons' testimony was the only direct evidence identifying Corona as Garcia's killer. Furthermore,
"the [other] murder, being no more heinous than [Garcia's], was not likely to create such prejudice
in the minds of the jury that it would have been unable to limit its consideration of the evidence to its
proper purpose." Id. Given Coons' questionable credibility, we hold that the trial court did not abuse
its discretion in admitting the evidence of the other murder.

Photographs


 In his first point of error, Corona contends that the trial court erred in allowing photographs
depicting the trail of blood left by Garcia as she went from the front room to the back room of her
house after being shot. When the photographs were introduced, Corona's attorney objected,
asserting that they were highly prejudicial and that any probative value was outweighed by the danger
of undue prejudice.

 Generally, a photograph is admissible if verbal testimony as to the subject depicted in the
photograph is also admissible. Williams v. State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).
Photographs of a crime scene aid the jury in determining many things, including the manner and
means of the victim's death, the force used, and sometimes even the identity of the perpetrator. Id.

 Although photographs are generally relevant, Corona argues that the photographs in this case
did not have any probative value because the only contested issue was identity. Although identity was
the only defensive issue raised, the State was required to prove each element of the offense, and the
photographs had some relevance in satisfying the State's overall burden of proof on the murder
charge.

 Corona further argues that the photographs were duplicative of the crime scene video.
Several courts, however, have noted that video recordings and still photographs are not cumulative
of each other because each offers a different view of the evidence to the jury. See, e.g., Gordon v.
State, 784 S.W.2d 410, 412 (Tex. Crim. App. 1990); Yates v. State, 941 S.W.2d 357, 368 (Tex.
App.--Waco 1997, pet. ref'd); Flores v. State, 915 S.W.2d 651, 652 (Tex. App.--Houston [14th
Dist.] 1996, pet. ref'd). 

 Finally, Corona contends that the bloody trail depicted in the photographs would have had
such an emotional impact on the jury that its decision would be based on emotion. In determining
whether evidence should be excluded under Rule 403, the trial court considers the following factors:
(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence;
and (4) the proponent's need for the evidence. Reese v. State, 33 S.W.3d 238, 240-41 (Tex. Crim.
App. 2000). Applying an abuse of discretion standard, we must determine if the trial court's
balancing between the probative and prejudicial values is reasonable in view of all the relevant facts.
Id. In the context of the trial court's admission of photographic evidence, we should consider "... the
number of photographs, the size of [each] photograph, whether it is in color or black and white, the
detail shown in the photograph, [and] whether the photograph is gruesome." Id.

 Having reviewed the photographs, we do not find that the trial court abused its discretion in
admitting them. The detective's testimony regarding the photographs is contained in four pages of
the almost three hundred pages of reporter's record. Thus, the amount of time devoted to developing
the evidence was minimal. Only five photographs were introduced, and only two of those
photographs depicted a sizable amount of blood. See Shavers v. State, 881 S.W.2d 67, 77 (Tex.
App.--Dallas 1994, no pet.) (noting a gory and gruesome crime scene does not necessarily make
photographs of that scene more prejudicial than probative). The photographs were in color; however,
they were only 3"x5" in size. The photographs did not depict any bodies and, although they depicted
blood, they were not particularly gruesome. Accordingly, the trial court did not abuse its discretion
in admitting the photographs into evidence.

Conclusion


 Based on the foregoing reasons, the trial court's judgment is affirmed.




 Phylis J. Speedlin, Justice


DO NOT PUBLISH