Opinion issued December 1, 2005 











In The
Court of Appeals
For The
First District of Texas




                                                   NO. 01-04-01066-CR




RODERICK M. DEARBORNE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 979485




MEMORANDUM OPINION

          Appellant, Roderick M. Dearborne, was convicted by a jury of possession with
the intent to deliver a controlled substance weighing at least 400 grams.


 See Tex.
Health & Safety Code Ann. § 481.112 (Vernon 2003). After appellant pleaded
true to two enhancement paragraphs alleging prior convictions for attempted murder
and unauthorized use of a motor vehicle, the trial court assessed his punishment at
25 years’ confinement. 
          In nine points of error, appellant contends that the trial court erred by (1)
denying his motion for judgment of acquittal after the State rested; (2) granting the
State’s challenge for cause regarding two qualified veniremen; (3) denying
appellant’s Batson objection to the State’s use of peremptory challenges; (4)
admitting inadmissible hearsay testimony; (5) prohibiting the introduction of
impeaching evidence concerning the State’s informant; (6) admitting an item into
evidence which was not sufficiently authenticated; (7) admitting evidence obtained
through an unlawful search and seizure; (8) allowing a witness to read from a
document that was not admitted into evidence; and (9) assessing a sentence that
violated appellant’s constitutional rights.
          We affirm. 
Background
          In 2003, Paul K. Newman, facing a felony charge for possession of marijuana,
entered a written contract with law enforcement officials to provide them with
information leading to the arrest of drug dealers. In exchange for such information,
the State agreed to dismiss the charges pending against Newman. 
          Pursuant to the contract, Newman began working with Officer D. Davis, an
undercover officer with the Houston Police Department’s Narcotics Division
(HPDND). Newman informed Davis that he had previously conducted drug
transactions with an individual he knew as Mark Billingsley.


 He further relayed that
Billingsley was known to have two sources for drugs, a Hispanic man named
Anthony, and a black man Newman believed to be Billingsley’s cousin. Davis
instructed Newman to arrange a purchase of cocaine from Billingsley. According to
the plan, Newman would act as the middleman, handling the deal’s logistics, while
Davis would pose as the buyer. 
          Newman contacted Billingsley and informed him that he knew someone
interested in purchasing two kilograms of cocaine. A meeting was arranged among
Newman, Davis, and Billingsley to negotiate a price. There, Billingsley agreed to sell
Davis two kilograms of cocaine for a total of $35,000. Billingsley then proceeded to
make telephone calls necessary to procure the drugs, and shortly thereafter, instructed
Davis to follow him to an undisclosed location to complete the transaction. 
          Newman rode with Billingsley, and Davis followed in his own vehicle. The
parties arrived at an apartment complex located at 6101 Antoine. While Davis
remained in his vehicle, Newman and Billingsely approached apartment number 1321
and were admitted by Michael Green. After briefly remaining in the apartment,
Newman returned to the parking lot and conferred with Davis. He informed Davis
that the cocaine was not yet in the apartment and that Billingsley possessed a firearm. 
Davis and Billingsley then spoke with one another on their respective cell phones,
arguing about whether Davis would show Billingsley the agreed upon $35,000 before
seeing the cocaine. With the argument unresolved, Davis and Newman left the
apartment complex in Davis’s vehicle and circled the immediate area. Shortly
thereafter, Billingsley called Davis and informed him that the cocaine had arrived at
the apartment complex, but was not yet inside apartment number 1321. 
          Officers B. Hundersmarck and T. Walker, of the HPDND, were two of the
officers assigned to provide backup support to Davis. Hundersmarck, an undercover
officer, observed appellant arrive at 6101 Antoine in a maroon Chevy Tahoe outfitted
with expensive rims. At the time of appellant’s arrival, Davis and Newman had not
yet returned to the apartment complex. Hundersmarck saw Billingsley and Green
approach the Tahoe. Green entered from the front passenger side and Billingsley
remained outside. Appellant and Green appeared to converse for approximately 5
minutes. Appellant then got out of the Tahoe, opened the rear hatch, removed a black
box, and returned to the driver’s seat. Minutes later, Walker observed Green get out
of the Tahoe carrying a black box. Green and Billingsley returned to apartment
number 1321, while appellant re-positioned his car to allow him to observe who
entered and exited the apartment. 
          Davis then received a telephone call from Billingsley who informed him that
the cocaine was now in the apartment. Davis and Newman returned to 6101 Antoine,
and Newman again entered apartment number 1321, while Davis remained in his car. 
During this visit to the apartment, Newman saw approximately one kilogram of
cocaine on the dining room table and a black box located nearby. Neither of the items
had been there previously. Newman told Billingsley that he needed to retrieve the
money from Davis, and he left the apartment. After Newman informed Davis that he
had observed the cocaine, the two left the apartment complex, and Davis telephoned
Billingsley to inform him the deal was off. 
          After Davis cancelled the deal, Hundersmarck observed Billingsley, Green, and
appellant leave the apartment complex in separate vehicles. Prior to Green’s
departure, Hundersmarck witnessed Green place a black box in the rear hatch area of
his car, a silver Mustang. Hundersmarck testified that the box Green placed in his
Mustang looked identical to the box appellant had earlier retrieved from the rear of
his Tahoe. Billingsley, Green, and appellant were stopped by officers moments after
they left the apartment complex. Officers recovered the black box, which contained
approximately one kilogram of cocaine, from Green’s mustang.. No other black
boxes were found, either in Billingsley’s or appellant’s car. During a search of
appellant’s vehicle, officers discovered a handgun and bullets. 
 
Discussion
A. Denial of Appellant’s Motion for Judgment of Acquittal
          In his first pont of error, appellant contends that the trial court erred by denying
his motion for judgment of acquittal after the State rested. 
1. Standard of Review
          A challenge of the trial court’s denial of a motion for instructed verdict is, in
effect, a challenge to the legal sufficiency of the evidence supporting the conviction. 
See Williams v. State 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). We review the
legal sufficiency of the evidence by viewing the evidence in the light most favorable
to the verdict to determine whether any rational fact finder could have found the
essential elements of the crime beyond a reasonable doubt. Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). Although our analysis considers all evidence presented at trial, we
may not re-weigh the evidence and substitute our judgment for that of the fact finder. 
King, 29 S.W.3d at 562. 
2. Possession of a Controlled Substance
          To prove the offense of possession of a controlled substance, the State must
show that the accused (1) exercised actual care, custody, control, or management of
the controlled substance and (2) was conscious of his connection with it and knew
what it was. See Tex. Health & Safety Code Ann. §§ 481.002(38), 481.112(f)
(Vernon Supp. 2005).
          When the accused, like appellant, is not in exclusive possession of the place
where the contraband is found, we cannot conclude that the accused had knowledge
of and control over the contraband unless the State establishes an “affirmative link”
between the accused and the contraband—i.e., independent facts and circumstances
that affirmatively link the accused to the contraband so as to suggest that the accused
had knowledge of the contraband and exercised control over it.


 Rhyne v. State, 620
S.W.2d 599, 601 (Tex. Crim. App. 1981); Roberson v. State, 80 S.W.3d 730, 735
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). An affirmative link may be
established through either direct or circumstantial evidence. Brown v. State, 911
S.W.2d 744, 747 (Tex. Crim. App. 1995). 
          The Court of Criminal Appeals has identified several factors that may help to
establish an affirmative link between the accused and the contraband, including
whether (1) the contraband was in plain view; (2) the contraband was conveniently
accessible to the accused; (3) the place where the contraband was found was
enclosed; (4) conduct by the accused indicated a consciousness of guilt; and (5) the
accused had a special connection to the contraband.


 Courts have also considered the
amount of contraband found. Poindexter, 153 S.W.3d at 412. Although several
factors relevant to establishing an affirmative link may have been identified, the
number of factors actually supported by the evidence is not as important as the
“logical force” they collectively create to prove that a crime has been committed. 
Roberson, 80 S.W.3d at 735 (quoting Whitworth, 808 S.W.2d at 569).
          Here, sufficient evidence existed for a rational trier of fact to conclude that
appellant consciously exercised control over the cocaine in question. When Davis
and Newman first arrived at the apartment complex, Billingsley informed Newman
that the cocaine had not arrived. Shortly thereafter, Hundersmarck observed
appellant’s Tahoe enter the complex’s parking lot. Billingsley then told Davis that
the cocaine was on site, although not yet in the apartment. Moments later,
Hundersmarck witnessed appellant retrieve a black box from the rear of his Tahoe,
and Walker observed Green carry the box from appellant’s vehicle to apartment
number 1321. When Newman returned to the apartment following these events, he
testified that both a kilogram of cocaine and a black box were present for the first
time. Hundersmarck testified that he saw Green leave the apartment carrying a box
that looked identical to the one appellant had removed from his Tahoe, and officers
later found a kilogram of cocaine inside the box. The logical force of this evidence
suffices to link appellant affirmatively to the cocaine. See Roberson, 80 S.W.3d at
735. 
3. Intent to Deliver
A person commits an offense if he knowingly possesses a proscribed substance 
with the intent to deliver it. Tex. Health & Safety Code Ann. § 481.112(a)
(Vernon 2003). To establish intent, it must be shown that the defendant possessed
a conscious objective or desire to engage in the conduct in question. Tex. Pen. Code
Ann. § 6.03(a) (Vernon 2003). 
          Intent to deliver a controlled substance may be proved by circumstantial
evidence. Williams v. State, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.]
1994, no pet.). Factors that tend to show an intent to deliver include (1) the place
where the defendant was arrested and the nature of the location; (2) the quantity of
the controlled substance in the defendant’s possession; (3) the packaging of the
contraband; and (4) the defendant’s possession of large amounts of cash. Id. 
          Here, sufficient evidence existed for a rational trier of fact to conclude that
appellant consciously desired to deliver the cocaine. Significantly, appellant was
arrested while leaving the scene of an attempted drug transaction, where he was
observed delivering a black box to Green. When Green was arrested, a black box in
his possession contained a large quantity of cocaine, approximately 1 kilogram.
          Viewing the evidence in the light most favorable to the verdict, a reasonable
trier of fact could have found beyond a reasonable doubt that appellant possessed a
controlled substance with intent to deliver. 
          We overrule appellant’s first point of error. 
B. Challenges for Cause
          In his second point of error, appellant contends that the trial court erred in
granting the State’s challenges for cause against venirepersons Joanna Kristen Torok
and Diana M. Hickerson. The State challenged both Torok and Hickerson on the
basis of their exhibiting a bias or prejudice in favor of the defendant. See Tex. Code
Crim. Proc. Ann. art 35.16(a)(9) (Vernon 2003). 
1. Standard of Review 
          We review a trial court’s decision to deny or grant a challenge for cause under
an abuse of discretion standard. See Curry v. State, 910 S.W.2d 490, 493 (Tex. Crim.
App. 1995). When a veniremember is challenged because of possible bias, “we must 
determine whether the veniremember’s beliefs would prevent or substantially impair
him from following the law as set out in the trial court’s instructions and as required
by the juror’s oath.” Lagrone v. State, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997). 
We review the record as a whole to determine the propriety of the trial court’s ruling. 
See Swearingen v. State, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). As the trial
court was able to observe voir dire directly, we accord great deference to its rulings
when the record indicates that a veniremember vacillated or equivocated. See id.
2. Torok
          After she discussed a possible bias against police offices with the State, Torok
volunteered that she tended not to believe officers of the law. The following exchange
ensued: 
TOROK:All I’m saying is that I know that a policeman has lied to
me. How am I supposed to know that he’s not lying with
this defendant?
 
          STATE:       That’s why I’m asking you. Are you telling me that you simply
can’t believe a policeman or that you have a bias against police
officers and you cannot set that bias aside?
 
TOROK: Yes. 

Torok later approached the bench and revealed that she had once been arrested for
possession of marihuana. She then stated, “I think I got kind of screwed by the
justice system . . . I don’t think I can believe the police.”
          In light of Torok’s experiences and statements, we conclude that the trial court
did not err in granting the State’s challenge for cause against her. 
3. Hickerson          
          When the State asked if any veniremembers would be less likely to convict in
a case involving confidential informants, Hickerson responded, “I think I would
depending on the circumstances.” She then agreed that she would look “long and
hard” at any testimony from an informant. Subsequently, Hickerson indicated that 
her brother-in-law had been charged with a “white collar crime.” After stating that
the experiences of her brother-in-law would not affect her as a juror, Hickerson
immediately interrupted the State to reassert her concerns regarding the use of
informants. Shortly thereafter, she stated that she was not sure whether her feelings
toward informants would cause her to be biased against the State. Such indecision
and uncertainty suggests that Hickerson was an equivocating venireperson, requiring
us to accord great deference to the trial court’s decision to grant the State’s challenge. 
See Swearingen, 101 S.W.3d at 99. Consequently, we hold that the trial court did not
err in granting the State’s challenge of Hickerson for cause. 
          We overrule appellant’s second point of error. 
          C. Batson Challenge
          In his third point of error, appellant argues that the trial court erred in denying
his Batson challenge to the State’s use of peremptory strikes against veniremembers
Tavares Demond Jackson, Gertrude Banks, and Betty Jean Davis. The trial court
implicitly overruled appellant’s Batson challenge by informing him that his
objections were noted and proceeding to seat the jury. See Tex. R. App. P. 33.1(a). 
 1. Standard of Review
          We will reverse a trial court’s ruling on a Batson challenge only if it appears
clearly erroneous. See Whitsey v. State, 796 S.W.2d 707, 726 (Tex. Crim. App.
1989). In applying this standard, we will not reverse the trial court’s ruling unless
we have a definite and firm conviction that a mistake has been made. See id. We
view the evidence in the light most favorable to the trial court’s ruling, and review
the record in its entirety, including the voir dire process, the racial constitution of the
venire, the State’s race- neutral explanations, and appellant’s rebuttal and impeaching
evidence. See id. 
2. Batson 
          Using a peremptory challenge based on a veniremember’s race violates the
United States Constitution’s Equal Protection Clause. Batson v. Kentucky, 476 U.S.
79, 86, 106 S. Ct. 1712, 1717 (1986). A Batson challenge consists of three prongs:
(1) the defendant must make a prima facie case that peremptory strikes were used to
dismiss veniremembers on the basis of their race; (2) if the defendant establishes a
prima facie case, the State must provide racially neutral explanations for its
challenged strikes; and (3) the defendant must establish that the State’s racially
neutral explanations are pretexts for purposeful discrimination. Id. at 97–98, 106 S.
Ct. at 1723–24. The burden of persuasion remains with the defendant throughout the
challenge. See Jasper v. State, 61 S.W.3d 413, 422 (Tex. Crim. App. 2001). A
finding that any peremptory strikes were racially motivated invalidates the jury
selection process, and a new trial is required. See Whitsey, 796 S.W.2d at 716. 
3. Jackson, Banks, and Davis
          Although it is not clear from the record that appellant made a prima facie case
of racial discrimination, the State nevertheless proffered racially neutral explanations
for its use of peremptory strikes against Jackson, Banks, and Davis. The State
indicated that it struck Jackson because he was young,


 had a short work history, and
had had a cousin tried for robbery; Banks because she was 69 years old, retired and
unemployed, and because her brother was facing charges for shooting at an officer
of the law; and Davis because her son had been convicted and served eight months
for writing “hot checks.” 
          Each of the reasons offered by the State for striking the veniremembers in
question has been held to be racially neutral for the purposes of a Batson challenge. 
See Dennis v. State, 925 S.W.2d 32, 40 (Tex. App.—Tyler 1995, pet. ref’d) (holding
that youth and unemployment are racially neutral reasons for striking a
veniremember); Shavers v. State, 881 S.W.2d 67, 76 (Tex. App.—Dallas 1994, no
pet.) (holding that peremptory challenges are racially neutral when used against a
veniremember whose relative has been charged with a criminal offense).  
          Once the State presented racially neutral reasons for its strikes, appellant was
required to rebut the State’s proffered explanations as pretextual. Appellant,
however, made no attempt to rebut the State’s explanations, nor did he object to any
statements made by the State when it offered its reasons for striking Jackson, Banks,
and Davis. In light of these facts, we cannot say that the trial court’s denial of
appellant’s Batson challenge was clearly erroneous. 
          We overrule appellant’s third point of error. 
          D. Admission of Hearsay Testimony
          In his fourth point of error, appellant argues that the trial court improperly
admitted hearsay statements by Billingsley during the State’s direct examination of
Davis. 
1. Standard of Review
          We review a trial judge’s decision to admit or exclude evidence under an 
abuse of discretion standard. See Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim.
App. 2001). The admissibility of an out-of-court statement under an exception to the
general hearsay exclusion rule is within the trial court’s discretion. Lawton v. State,
913 S.W.2d 542, 553 (Tex. Crim. App. 1995). The decision of the trial court will be
affirmed if its decision is within the zone of reasonable disagreement on the particular
issue. See Salazar, 38 S.W.3d at 151; Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990) (op. on reh’g). For hearsay to be admissible, it must fit into
an exception provided by the Rules of Evidence. See Tex. R. Evid. 803, 804. 
2. Billingsley’s Statements
          During direct examination by the State, Davis was asked to recount what
Billingsley had said to him when the two first met to discuss the terms of their
proposed drug transaction. Appellant objected that any testimony by Davis regarding
Billingsley’s statements amounted to hearsay. In response, the State contended that 
the proposed testimony was admissible under the co-conspirator hearsay exception. 
See Tex. R. Evid. 801(e)(2)(E). Appellant’s objection was overruled. 
          The co-conspirator hearsay exception provides that a statement is not hearsay
if it is offered against a party and is a statement by a party’s co-conspirator during the
course and in furtherance of the conspiracy. Id. The exception is not limited to
prosecutions for conspiracy; rather, it is a rule of evidence that applies to any offense. 
Roy v. State, 608 S.W.2d 645, 651 (Tex. Crim. App. 1980). A conspiracy occurs
when two or more people agree to take part in the commission of a felony. See
Meador v. State, 812 S.W.2d 330, 332 (Tex. Crim. App. 1991). The State has the
burden of showing that, at the time of his statement, the alleged co-conspirator was
participating in a conspiracy in which the defendant was also participating or which
he later joined, and that the statement was made in furtherance of that conspiracy. 
Ward v. State, 657 S.W.2d 133, 136–37 (Tex. Crim. App. 1983). A conspiracy may
be shown by circumstances surrounding the acts and conduct of the conspirators, or
it may be inferred from the evidence. See Wilkerson v. State, 933 S.W.2d 276, 279
(Tex. App.—Houston [1st Dist.] 1996, pet. ref’d). 
          Here, the evidence indicates that Newman conspired with Billingsley to effect
a sale of cocaine to Davis. Billingsley’s challenged statements, which concerned the 
amount and price of the cocaine, were made both during and in furtherance of this
conspiracy. Thus, we cannot say that the trial court abused its discretion by admitting
the challenged testimony. 
          We overrule appellant’s fourth point of error. 
          E. Points of Error Five Through Eight
          Appellant’s fifth, sixth, seventh, and eighth points of error concern the trial
court’s rulings on the admissibility of evidence. As each point of error shares the
same standard of review, abuse of discretion, we consolidate them here for the
purposes of review. 
1. Standard of Review
          We review a trial court’s ruling on the admissibility of evidence under an abuse
of discretion standard. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999);
Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). We reverse only if
the ruling is outside the zone of “reasonable disagreement.” Montgomery, 810
S.W.2d at 388–90. 
2. Impeachment Evidence
          In his fifth point of error, appellant contends the trial court erred by excluding
evidence that tended to impeach Newman’s credibility. 
          Appellant avers that Rule 609(a) of the Texas Rules of Evidence compelled the
admission of the impeaching evidence in question. See Tex. R. Evid. 609(a). For the
purposes of attacking the credibility of a witness, Rule 609(a) permits the admission
of evidence of a witness’s prior convictions provided that three conditions are met:
(1) the evidence must be “elicited from the witness or established by public record”;
(2) the crime in question must be either a felony or a crime involving moral turpitude;
and (3) the trial court must determine that the “probative value of admitting this
evidence outweighs its prejudicial effect to a party.” See Tex. R. Evid. 609(a).
          During his cross-examination of Davis, appellant asked if Newman, the
informant, “had any criminal violations since he went to work for you in March of
last year?” Appellant did not solicit impeaching evidence about Newman from
Newman himself, nor did appellant seek to admit evidence impeaching Newman by
public record, as required for admission by Rule 609(a). Morever, appellant did not
inquire as to felonies or crimes of moral turpitude, but rather “criminal violations” in
general. Because appellant failed to comply with Rule 609’s requirements for the
introduction of impeaching evidence, we conclude that the trial court did not err by
excluding the evidence at issue. 
          We overrule appellant’s fifth point of error. 
3. The Black Box
          In his sixth point of error, appellant contends the trial court improperly
admitted the State’s Exhibit 5, the black box, into evidence. 
          Appellant argues that the admission of the black box failed to comport with
Rule 901 of the Texas Rules of Evidence, which requires the authentication or
identification of an item prior to its being admitted in evidence. See Tex. R. Evid.
901(a); Angleton v. State, 971 S.W.2d 65, 67–68 (Tex. Crim. App. 1998). Rule
901(b) provides various illustrations of how an item may be properly authenticated
or identified. See Tex. R. Evid. 901(b). Included among these illustrations are (1)
testimony by a witness with knowledge that “a matter is what it is claimed to be” and
(2) “[a]ppearance, contents, substance, internal patterns, or other distinctive
characteristics, taken in conjunction with circumstances.” Tex. R. Evid. 901(b)(1),
(4). 
          Here, Hundersmarck testified that the State’s Exhibit 5 was the same black box
recovered from Green’s Mustang, and that the box looked identical to the one he
observed appellant retrieve from the rear of appellant’s Tahoe. Walker testified that
he saw Green leave appellant’s Tahoe carrying the black box and enter apartment
number 1321 and that he observed Green place the box in the rear hatch area of
Green’s Mustang immediately before leaving the apartment complex. Hundersmarck
further testified that the State’s Exhibit 5 was the only black box recovered from the
vehicles driven by Billingsley, Green, and appellant. In light of this testimony, we
hold that the trial court did not abuse its discretion in determining that the box was
properly authenticated for admission into evidence. 
          We overrule appellant’s sixth point of error. 
4. Appellant’s Handgun and Bullets
          In his seventh point of error, appellant contends that the trial court erred by
admitting into evidence a handgun and bullets that were illegally seized from his
Tahoe following a constitutionally impermissible search. 
          To complain of error on appeal, a defendant must make a specific, timely
objection during trial. Tex. R. App. P. 33.1(a)(1)(A); Havard v. State, 800 S.W.2d
195, 211 (Tex. Crim. App. 1989). If a party fails to timely and specifically object,
error is not preserved, and the complaint is waived. See Mendez v. State, 138 S.W.3d
334, 339 (Tex. Crim. App. 2004). A timely objection is one that is raised at the
earliest possible opportunity; a specific objection is one that adequately describes the
nature of the complaint. See Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995). A defendant may not, on appeal, argue a reason for error that was not urged
at trial. Havard, 800 S.W.2d at 811. 
          Here, appellant made neither a timely nor a specific objection. Regarding
timeliness, the items in question were described in some detail before appellant
protested. When he did object, appellant did so generally, stating “I would object
your honor.” Appellant did not object on the basis of an illegal search or seizure, and
thus raises those issues for the first time on appeal. By neglecting to enter a timely
and specific objection to the admission of the challenged items, appellant failed to
preserve error. See Havard, 800 S.W.2d at 811. 
          We overrule appellant’s seventh point of error. 
5. Newman’s Contract 
          In his eighth point of error, appellant argues that the trial court erred by
allowing Newman to read his contract with law enforcement in its entirety. 
          During its direct examination of Newman, the State asked questions referring
to Newman’s contract, but did not seek to introduce the contract in evidence. On
cross-examination, Newman was asked a series of questions about the contract. 
These questions by appellant’s counsel led the State, citing the Rule of Optional
Completeness, to request on redirect examination that Newman read the entire
contract into evidence. See Tex. R. Evid. 107. Appellant’s objection to the
contract’s being read into evidence was overruled. 
          The Rule of Optional Completeness is implicated when a party attempts to have
a portion of an act, declaration, conversation, writing, or recorded statement given in
evidence. See Sauceda v. State, 129 S.W.3d 116, 122 (Tex. Crim. App. 2004). When
such an attempt occurs, the opposing party may introduce into evidence the remaining
parts of the otherwise inadmissible act, declaration, conversation, writing, or recorded
statement. See id. The rule serves to guard against the possibility that the jury will
form a false impression by hearing or seeing only a part of some act, conversation,
or writing. See Credille v. State, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th
Dist.] 1996, pet. ref’d). 
          During his cross-examination of Newman, appellant asked no fewer than 18
questions regarding Newman’s contract with law enforcement. At least five of these
questions referred to specific paragraphs within the agreement. By extensively
examining Newman about the contents of his contract with law enforcement,
appellant effectively sought to have parts of the writing read into evidence. The
State was entitled under the Rule of Optional Completeness to introduce the
remaining parts of the contract. See Tex. R. Evid. 107. Thus the trial court did not
abuse its discretion in allowing Newman to read the contract in its entirety. 
          We overrule appellant’s eighth point of error. 
          F. Constitutionality of Appellant’s Sentence
          In his ninth point of error, appellant argues that his 25-year sentence runs afoul
of the U.S. Constitution’s prohibition on cruel and unusual punishment because it is
grossly disproportionate to the sentences assessed to Billingsley and Green, who both
received seven years deferred adjudication on charges stemming from the same drug
transaction. 
          To complain of error on appeal, a defendant must make a specific, timely
objection during trial. Tex. R. App. P. 33.1(a)(1)(A); Havard, 800 S.W.2d at 211. If
a party fails to do this, error is not preserved, and the complaint is waived. Mendez,
138 S.W.3d at 339 (Tex. Crim. App. 2004). It is well established that even
constitutional and statutory rights may be waived by failure to object. Wright v. State,
28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (concluding constitutional issues can be
waived); Solis v. State, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997,
pet. ref’d) (concluding statutory and constitutional rights can be waived). 
          Here, appellant, whose offense was enhanced with two prior felony
convictions, faced a sentence ranging from life to a minimum of 25 years. See Tex.
Pen. Code Ann. § 12.42(d) (Vernon Supp. 2005). Appellant pleaded true to both
enhancement paragraphs, and the trial court found both true and sentenced appellant
to 25 years in prison in prison. Thus, appellant received the minimum sentence
available. At the conclusion of the punishment hearing, appellant’s counsel, who at
no point objected to any aspect of the sentence, stated, “Thank you for the sentence
that you imposed Your Honor.” In light of appellant’s failure to raise a timely,
specific objection to his sentence, we conclude that he failed to preserve error.
Accordingly, appellant’s complaint is waived. 
          We overrule appellant’s ninth point of error. 











Conclusion

          We affirm the judgment of the trial court. 





                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.4.